The STATE of Ohio, Appellee,

v.

HENRY, Appellant.

[Cite as *State v. Henry*, 191 Ohio App.3d 151, 2010-Ohio-5171.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–09–092.

Decided Oct. 22, 2010.

Matthew L. Reger, Bowling Green Prosecuting Attorney, for appellee.

Terrence R. Rudes, for appellant.

---

SINGER, Judge.

{¶ 1} Appellant, Kristopher Henry, appeals his conviction in the Bowling Green Municipal Court for operating a motor vehicle with a prohibited alcohol content in violation of R.C. 4511.19(A)(1)(d). For the reasons that follow, we affirm.

{¶ 2} Shortly before 1:00 a.m. on May 28, 2009, an Ohio State Highway Patrol Trooper observed a car driven by appellant going south on U.S. 23 in Wood

County. The trooper followed the car for approximately five miles, during which time, the trooper would later testify, he observed appellant's car weaving and on five occasions cross the white line on the right side of the road. The trooper activated his overhead lights and stopped appellant near Risingsun.

{¶ 3} When the trooper advised appellant of the reason for the stop, he noted a moderate odor of an alcoholic beverage on appellant's breath and a glassiness in his eyes. The trooper requested that appellant accompany him to his patrol car. There appellant told the officer that he was on his way home from a bar when he was stopped. Appellant informed the trooper that he had consumed one or two beers that night. When the trooper inquired as to how long appellant had been at the bar, appellant told him he had arrived there at 7:00 p.m.

{¶ 4} At this point the trooper conducted a horizontal-gaze-nystagmus test, upon which appellant scored four of six clues. A portable breath test registered a result of .089 percent alcohol. On the one-leg-stand field sobriety test, appellant indicated three of four clues. The trooper arrested appellant for operating a vehicle while impaired and transported him to the Bowling Green Police Department.

{¶ 5} In Bowling Green, the trooper advised appellant of the Ohio informed-consent law and its consequences by reading him the back of Bureau of Motor Vehicles form 2255. Appellant then submitted to a breath-alcohol test on the Bowling Green Police Department's BAC Datamaster machine. The test showed appellant had a breath-alcohol content of .086 of a gram per 210 liters of breath. Appellant was charged with a violation of R.C. 4511.19(A)(1)(a) and (d) and a marked-lane violation.

{¶ 6} Appellant pleaded not guilty and moved to suppress the results of his breath test on the grounds that (1) Bowling Green police had failed to maintain calibration records for the BAC Datamaster as required by Ohio Health Department regulations, (2) police failed to advise him of the consequences with respect to his commercial driver's license ("CDL") as required by statute, and (3) testimony as to the results of a portable breath-test device should not be permitted to establish probable cause for arrest. Following a hearing, the trial court denied appellant's suppression motion, and the matter proceeded to trial.

{¶ 7} Before trial, appellant amended his plea to the marked-lanes violation from not guilty to no contest. The court accepted the plea and found appellant guilty of the marked-lanes violation. Also prior to trial, the state dismissed the R.C. 4511.19(A)(1)(a) charge.

{¶ 8} The matter then proceeded to trial before a jury on the R.C. 4511.19(A)(1)(d) violation only. After trial, the jury found appellant guilty as charged. The court sentenced appellant to 180 days in jail, with 170 suspended;

a $1,625 fine, with $625 suspended; and a five-year license suspension, with three years suspended. From this judgment, appellant brings this appeal. Appellant sets forth the following three assignments of error:

{¶ 9} "Assignment of Error I. The court committed prejudicial error in denying the defendant's motion to suppress.

{¶ 10} "Assignment of Error II. Failure to advise a person with a commercial drivers license (CDL) arrested for operating a vehicle impaired (OVI), as required by statute requires the suppression of the breath test.

{¶ 11} "Assignment of Error III. The court committed prejudicial error in allowing testimony of a portable breath test."

## I. Substantial Compliance

{¶ 12} "R.C. 4511.19 is a strict liability statute. * * * In R.C. 4511.19(A)(3) [now R.C. 4511.19(A)(1)(d)] the General Assembly defined the point at which an individual can no longer drive without being a substantial danger to himself and others. * * * In determining whether the defendant committed the *per se* offense, the trier of fact is not required to find that the defendant operated a vehicle while under the influence of alcohol or drugs, but only that the defendant's chemical test reading was at the prescribed level and that the defendant operated a vehicle within the state. The accuracy of the test results is a critical issue in determining a defendant's guilt or innocence." *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32.

{¶ 13} Before the results of a breathalyzer test such as those produced by the BAC Datamaster may be introduced into evidence, the state must show that it substantially complied with the rules governing the use of such a device as approved by the Ohio Director of Health and contained in the Ohio Administrative Code. *State v. Mayl,* 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 48. Ohio Adm.Code 3701–53–04 provides that an evidential breath-testing instrument shall be checked no less than every seven days. Such a check shall include a radio-frequency-interference test and a check against a known-value ethyl-alcohol solution.

{¶ 14} "An instrument check result is valid when the result of the instrument check is at or within five one-thousandths (0.005) grams per two hundred ten liters of the target value for that approved solution. An instrument check result which is outside the range specified in this paragraph shall be confirmed by the senior operator using another bottle of approved solution. If this instrument check result is also out of range, the instrument shall not be used until the instrument is serviced or repaired." Ohio Adm.Code 3701–53–04(A)(2). The

results of such checks must be retained for a minimum period of three years. Ohio Adm.Code 3701–53–04(G); Ohio Adm.Code 3701–53–01(A).

{¶ 15} In the suppression hearing in this matter, the Bowling Green Police officer responsible for maintaining the department's BAC Datamaster presented testimony and documentation that the machine used for appellant's test was checked for accuracy on May 27, 2009, the day before appellant's breath test, and on June 3, 2009, after appellant's breath test. Both tests revealed results within the prescribed tolerances.

{¶ 16} The Bowling Green officer also testified that it was his practice, when a known solution tested out of tolerance, to stop using the solution and make a notation on the back of the solution's certificate that it had been disposed of as being "no longer within tolerance." The officer did not retain the printed "evidence slip" from the machine because he did not consider it a "valid" test.

{¶ 17} Appellant characterizes Bowling Green's failure to retain the evidence slips as an intentional destruction of records and insists that the act of destruction defeats any claim of substantial compliance with the health department regulations. The state responds that, at worst, the failure to retain the slips is a de minimis infraction that in no way prejudiced appellant.

{¶ 18} "Substantial compliance" was discussed in *Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, at ¶ 49:

{¶ 19} " '[W]e are cognizant that if "we were to agree * * * that any deviation whatsoever from th[e] regulation rendered the results of a [test] inadmissible, we would be ignoring the fact that strict compliance is not always realistically or humanly possible." *[State v.] Plummer* [1986], 22 Ohio St.3d [292] at 294, 22 OBR 461, 490 N.E.2d 902. Precisely for this reason, we concluded in *[State v.] Steele* [(1977), 52 Ohio St.2d 187, 6 O.O.3d 418, 370 N.E.2d 740] that rigid compliance with the Department of Health regulations is not necessary for test results to be admissible. [Id.] at 187, 6 O.O.3d 418, 370 N.E.2d 740, (holding that the failure to observe a driver for a "few seconds" during the 20–minute observation period did not render the test results inadmissible). To avoid usurping a function that the General Assembly has assigned to the Director of Health, however, we must limit the substantial-compliance standard set forth in *Plummer* to excusing only errors that are clearly de minimis. Consistent with this limitation, we have characterized those errors that are excusable under the substantial-compliance standard as "minor procedural deviations." *State v. Homan* (2000), 89 Ohio St.3d 421, 426, 732 N.E.2d 952.' *[State v.] Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 34."

{¶ 20} Ohio Adm.Code 3701–53–04 makes no distinction between valid or invalid instrument checks. Consequently, an instrument check that shows a

known solution is out of tolerance is one of those documents that should be retained, pursuant to Ohio Adm.Code 3701–53–01(A). Having said that, it is also clear that the practice employed in Bowling Green of noting the date a known solution goes out of tolerance on the back of the solution's certificate provides a defendant with sufficient substitute notice of the event. The practice, then, constitutes a minor procedural deviation and suffices as substantial compliance with the health code.

{¶ 21} Accordingly, appellant's first assignment of error is not well taken.

## II. CDL Warnings

{¶ 22} R.C. 4506.17(A) provides:

{¶ 23} "Any person who holds a commercial driver's license or operates a commercial motor vehicle requiring a commercial driver's license within this state shall be deemed to have given consent to a test or tests of the person's * * * breath, * * * for the purpose of determining the person's alcohol concentration * * *."

{¶ 24} R.C. 4506.17(C) states:

{¶ 25} "A person requested to submit to a test under division (A) of this section shall be advised by the peace officer requesting the test that a refusal to submit to the test will result in the person immediately being placed out-of-service for a period of twenty-four hours and being disqualified from operating a commercial motor vehicle for a period of not less than one year, and that the person is required to surrender the person's commercial driver's license to the peace officer."

{¶ 26} If one refuses to submit to a test, or the test discloses a blood– or breath-alcohol concentration of .04 percent, R.C. 4506.17(D) directs the peace officer conducting the test to demand surrender of that person's CDL. The officer is instructed to forward the CDL with a sworn statement of the refusal or prohibited alcohol content to the registrar of motor vehicles. The registrar is then directed to disqualify the CDL holder from driving a commercial vehicle for one year for a first incident or, after one or more previous incidents, "for life or such lesser period as prescribed by rule by the registrar." R.C. 4506.17(E). If a driver is disqualified from holding a CDL, the registrar must immediately notify him or her of the length of the disqualification and advise the driver of the right to request a hearing on the disqualification. R.C. 4506.17(L).

{¶ 27} Appellant was not in a commercial vehicle when arrested. Neither was he advised of the consequences of refusing an alcohol test or of an unlawful result upon his CDL as required by R.C. 4506.17. Instead, he was read the implied-consent warnings mandated by R.C. 4511.192 as stated in the upper portion of

BMV form 2255.[1] Appellant insists that such warnings are insufficient and, absent proper statutory notice, the resultant test should be suppressed.

{¶ 28} Appellee responds that the R.C. 4506.17 warnings only apply when the CDL holder is actually driving a commercial vehicle when stopped. Alternatively, the state argues, even if the R.C. 4506.17 warnings are required of a CDL holder operating his or her personal vehicle, failure to read the warnings does not warrant suppression of the test results. Any remedy flowing from a failure to read the R.C. 4506.17 warnings relates only to the license-suspension process, the state insists, and does not involve the criminal proceeding. Moreover, the state maintains, citing *State v. French* (1995), 72 Ohio St.3d 446, 449, 650 N.E.2d 887, suppression is not appropriate because the exclusionary rule only applies to evidence obtained in violation of the Constitution, not evidence obtained in violation of a statute.

{¶ 29} In fairness to the highway patrol trooper in this matter, he followed the instructions printed on BMV form 2255, which indicated that the R.C. 4506.17 warnings be read only when the suspect is driving a commercial vehicle. This instruction is not in conformity with the statute. R.C. 4506.17(C) directs that the warnings be issued to "[a] person requested to submit to a test under division (A) of this section." R.C. 4506.17(A) defines the persons that may be requested to submit to a test as "[a]ny person who holds a commercial driver's license or operates a commercial motor vehicle requiring a commercial driver's license." By the plain language of the statute, any person holding a CDL should be informed of the R.C. 4506.17 warnings prior to breath testing.

{¶ 30} R.C. 4506.17, like R.C. 4511.191, is an implied-consent statute and is essentially civil and administrative in nature. It is, therefore, collateral to any criminal proceeding that may be instituted under R.C. 4511.19. *State v. Tramonte* (Aug. 27, 1993), 6th Dist. No. 92–OT–050, 1993 WL 323635. With respect to the admissibility of chemical tests in a criminal proceeding, we have held:

{¶ 31} "While the failure to properly inform a defendant of the consequences of a refusal to submit to testing may very well preclude the suspension of his license pursuant to R.C. 4511.191 and R.C. 4511.193, there is no provision in R.C. 4511.19 that requires compliance with implied consent procedures as a condition of the admissibility of chemical test results in DUI prosecutions." Id.; accord *State v. O'Neill* (2000), 140 Ohio App.3d 48, 57, 746 N.E.2d 654.

{¶ 32} This reasoning applies to the implied-consent warnings contained in R.C. 4506.17 as well. While failure to inform a defendant possessing a CDL

---

1.  BMV form 2255 also has an R.C. 4506.17 warning statement to be read "in addition to the above to an offender driving a commercial vehicle," but the arresting officer testified he only read the R.C. 4511.192 warning to appellant.

that the consequence of refusing to submit to testing may be the suspension of his CDL in the administrative proceeding, there is no statutory requirement that requires compliance with implied-consent procedures as a prerequisite to the admissibility of the test in a criminal proceeding. Accordingly, appellant's second assignment of error is not well taken.

### III. Portable Breath Test

{¶ 33} In his final assignment of error, appellant insists that the trial court erred in admitting the results of the portable breathalyzer test ("PBT") performed on appellant in the field. According to appellant, such tests have been held in many appellate districts to be inadmissible, even for purposes of establishing probable cause for arrest. Appellant concedes that when this court addressed the issue in *State v. Masters*, 6th Dist. No. WD–06–045, 2007-Ohio-7100, 2007 WL 4563478, at ¶ 16, we held that "although a portable breath test may not be accurate enough for a per se violation as under R.C. 4511.19(A)(1)(d), * * * an officer is entitled to consider [its results] in weighing whether there exists probable cause to arrest." Accord *State v. Coates* (Feb. 25, 2002), 4th Dist. No. 01CA21, 2002 WL 851765.

{¶ 34} We recognize that the appellate districts are not in agreement on the PBT issue and, were the question a determinative issue in this matter, we would be pleased to certify a conflict. It is not a determinative issue here, however.

{¶ 35} Appellant has directed our attention to no authority from any district that holds that the mere mention of PBT results during a suppression hearing mandates that the court ignore other evidence by which an officer may establish probable cause to arrest. *State v. Smith*, 11th Dist. No. 2006–P–0101, 2008-Ohio-3251, 2008 WL 2586664 (without consideration of PBT results, results of field sobriety tests provided probable cause to arrest); *State v. Jividen*, 3d Dist. No. 9–05–29, 2006-Ohio-2782, 2006 WL 1519702, ¶ 17 (there was sufficient evidence to show probable cause to arrest without PBT results); *State v. Ferguson* (Apr. 18, 2002), 3d Dist. No. 4–01–34, 2002 WL 596115 (red eyes, slurred speech, swaying from side to side were sufficient to provide probable cause to arrest, even without PBT results); *State v. Keith*, 5th Dist. No. 02CA01, 2003-Ohio-2354, 2003 WL 21040298, ¶ 12 (probable cause to arrest may be established without any field sobriety tests, including the PBT); *State v. Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234, ¶ 42 (PBT inadmissible at trial, whether the results or refusal to submit); *Cleveland v. Sanders*, 8th Dist. No. 83073, 2004-Ohio-4473, 2004 WL 1902228, ¶ 25 (results of PBT alone are not sufficient to establish probable cause to arrest); *State v. Delarosa*, 11th Dist. No. 2003–P–0129, 2005-Ohio-3399, 2005 WL 1538264, ¶ 59 (trooper's observations established reasonable suspicion without consideration of PBT results).

{¶ 36} We reiterate our position that the result of a PBT is information that an officer may consider in the totality of the circumstances to determine probable cause to arrest. Nevertheless, in this matter the trooper noted that appellant's car was weaving, that appellant had glassy eyes and a moderate odor of alcohol on his breath, and that appellant performed poorly on two field-sobriety tests. These circumstances, without the PBT results, are sufficient to determine probable cause to arrest appellant for an OVI violation. As a result, appellant could not have been prejudiced by the introduction of the PBT results at the suppression hearing.

{¶ 37} Accordingly, appellant's third assignment of error is not well taken.

{¶ 38} On consideration whereof, the judgment of the Bowling Green Municipal Court is affirmed. It is ordered that appellant pay court costs of this appeal, pursuant to App.R. 24.

Judgment affirmed.

OSOWIK, P.J., and HANDWORK, J., concur.