[Cite as *Bowling Green v. Murray*, 2019-Ohio-4285.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio/City of Bowling Green      Court of Appeals No. WD-18-045

    Appellee      Trial Court No. 18TRC00283-A

v.

Kyle P. Murray      **DECISION AND JUDGMENT**

    Appellant      Decided: October 18, 2019

* * * * *

Hunter Brown, Bowling Green Prosecutor and Paul A. Skaff,
Assistant Prosecutor, for appellee.

Larry V. DiLabbio, for appellant.

* * * * *

**MAYLE, P. J.**

**{¶ 1}** Defendant-appellant, Kyle Murray, appeals the May 30, 2018 judgment of the Bowling Green Municipal Court, and its underlying decision denying his motion to suppress the results of field sobriety and breath-alcohol-concentration tests. For the following reasons, we affirm the trial court judgment.

## I. Background

{¶ 2} On January 14, 2018, Kyle Murray drove to the State Highway Patrol Post in Bowling Green, Ohio to pick up a friend who had been arrested for operating a vehicle while under the influence of alcohol ("OVI"). Shortly after arriving, Murray himself was arrested for OVI, a violation of R.C. 4511.19(A)(1)(a). On March 14, 2018, Murray filed a motion to suppress the results of field sobriety and breath-alcohol-concentration ("BAC") tests leading to his arrest, claiming that the officer lacked the reasonable, articulable suspicion necessary to warrant detaining him and administering the tests.

{¶ 3} The trial court held a suppression hearing on April 17, 2018. State Highway Patrol Trooper Devon Black testified that on January 14, 2018, at around 3:45 a.m., he was working at the patrol post in Bowling Green. Murray entered the lobby and told Trooper Black that he was there to pick up his friend. Trooper Black observed that Murray's eyes were "extremely red and glassy" and he noticed that Murray had "an odor of an alcoholic beverage emitting from his breath and person." In response to questioning by defense counsel, he characterized the odor of alcohol as "strong" and Murray's movements as "lethargic." Trooper Black "believed * * * that he was under the influence of alcohol." Because State Highway Patrol protocol mandates that persons arrested for OVI violations be released to a sober driver, Trooper Black decided to question Murray further.

{¶ 4} In response to questioning by Trooper Black, Murray admitted that he had consumed three beers approximately three to four hours before arriving at the post, and

2.

that he had driven himself and another passenger there. Trooper Black did not see Murray operating the vehicle, so he did not observe any erratic driving, and Murray did not appear to stumble or slur his speech. Nevertheless, because of the appearance of Murray's eyes, the odor of alcohol, and Murray's admission to having consumed three beers, Trooper Black asked Murray to participate in field sobriety testing.

{¶ 5} Trooper Black conducted the horizontal gaze nystagmus ("HGN") test and found six out of six possible clues indicating that Murray was under the influence of alcohol. He then asked Murray to take a portable breath test ("PBT"), which he also failed by registering at a level of .082 when the legal limit is .08. Following the results of these two tests, Trooper Black placed Murray under arrest for OVI and transported him to the breath testing room at the post. After reading the BMV 2255 form to him, Murray agreed to the BAC test and signed the form indicating that he was aware of the consequences. This test showed that Murray had a BAC level of .092.

{¶ 6} The trial court denied Murray's motion to suppress based on his "voluntary arrival at the Highway Patrol post at 03:45; his admission to driving to the post; his admission to consumption of three beers; his bloodshot, glassy eyes; his strong odor of alcoholic beverage upon his person; and then the results of the horizontal gaze nystagmus test, six out of six clues; and the .082 percent on the portable breath test."

{¶ 7} Following the denial of his motion to suppress, Murray entered a plea of no contest to the R.C. 4511.19(A)(1)(a) violation. He was found guilty and sentenced. He appealed and identifies a single error for our review:

3.

The trial court erred finding that Trooper Black had a reasonable suspicion, based on articulable facts, to warrant the detention of the defendant for the purposes of administering any field sobriety test and BAC[.]

## II. Law and Analysis

{¶ 8} In his only assignment of error, Murray asserts that Trooper Black failed to satisfy the requirements of the Fourth Amendment because he lacked a reasonable suspicion based on articulable facts to administer field sobriety and BAC tests, and, therefore, arrested him without probable cause. He also argues that the trial court erred in considering the results of the PBT in considering whether Trooper Black had probable cause to arrest Murray for OVI.

{¶ 9} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When the trial court considers a motion to suppress, it acts as the factfinder and is in the best position to resolve factual questions and to evaluate the credibility of witnesses. *Id.* We, therefore, must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Our role then is to independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. *Id.*

4.

**A. The type of police-citizen encounter dictates the protections afforded.**

{¶ 10} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect citizens from unreasonable searches and seizures. "'The U.S. Supreme Court has created three categories of police-citizen contact to identify the separate situations where constitutional guarantees are implicated: (1) consensual encounters, (2) investigative or "*Terry* [*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]" stops, and (3) arrests.'" (Citations omitted.) *State v. Williams*, 6th Dist. Lucas No. L-17-1148, 2018-Ohio-5202, ¶ 20, quoting *State v. Staten*, 4th Dist. Athens No. 03CA1, 2003-Ohio-4592, ¶ 16.

{¶ 11} An arrest requires probable cause. *State v. Barner*, 6th Dist. Wood No. WD-01-034, 2002-Ohio-2044. "Probable cause exists when circumstances would warrant a prudent person to believe that a suspect has committed an offense." *Id.*

{¶ 12} An investigatory stop requires reasonable, articulable suspicion of criminal activity. *State v. Mesley*, 134 Ohio App.3d 833, 840, 732 N.E.2d 477 (6th Dist.1999), citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). It constitutes a seizure for purposes of the Fourth Amendment. *State v. Westover*, 2014-Ohio-1959, 10 N.E.3d 211, ¶ 16 (10th Dist.).

{¶ 13} A consensual encounter requires neither probable cause nor reasonable, articulable suspicion of criminal activity. *Staten* at ¶ 17. An encounter may be said to be consensual when police "approach an individual in a public place, engage the person in conversation, and request information, as long as the person is free to walk

5.

away." *Id.* An officer may ask to examine a person's identification or search his or her belongings during a consensual encounter and he need not inform the citizen that he or she may decline the request and walk away. *Id.* When a consensual encounter turns into an investigative detention, however, constitutional protections are implicated and the officer must have reasonable suspicion for the detention. *State v. Martin*, 2018-Ohio-1705, 111 N.E.3d 730, ¶ 9 (9th Dist.).

**B. Trooper Black's initial encounter with Murray was consensual.**

{¶ 14} Murray does not attempt to categorize his initial encounter with Trooper Black. The city maintains that the initial encounter was consensual because Murray voluntarily went to the patrol post to pick up his friend. We agree with the city.

{¶ 15} In *State v. Trevarthen*, 11th Dist. Lake No. 2010-L-046, 2011-Ohio-1013, ¶ 19, the defendant drove to the police station to pick up his friend who had been arrested for OVI. He parked behind a trooper's police cruiser. The trooper exited the cruiser, approached the defendant's vehicle, and requested his driver's license. The court found that this amounted to a "consensual encounter" between the defendant and the trooper.

{¶ 16} Similarly, in *State v. Trimble*, 11th Dist. Portage No. 2010-P-0078, 2011-Ohio-4473, the defendant drove to the police station to pick up a friend who had been arrested for OVI. The trooper went out to the parking lot and approached the defendant's vehicle to ensure that he was a licensed driver. The court characterized the trooper's encounter with the defendant as consensual.

6.

{¶ 17} We find that Murray's initial encounter with Trooper Black was consensual. Similar to *Trevarthen* and *Trimble,* Murray's interaction with Trooper Black occurred when Murray voluntarily entered the police station to pick up his friend who had been arrested for OVI.

{¶ 18} The next question we must resolve is whether, during that consensual encounter, Trooper Black developed reasonable, articulable suspicion that Murray had driven to the patrol post while intoxicated, so as to justify the investigative detention and field sobriety tests that followed.

**C. Reasonable, articulable suspicion arose during the consensual encounter.**

{¶ 19} Where an officer requires a driver to participate in field sobriety testing, it qualifies as a seizure subject to Fourth Amendment protection. *State v. Bright*, 5th Dist. Guernsey No. 2009-CA-28, 2010-Ohio-1111, ¶ 17. "A request that a driver perform field sobriety tests must be separately justified by specific, articulable facts showing a reasonable basis for the request." (Internal citations and quotations omitted.) *Trevarthen* at ¶ 15. Trooper Black, therefore, was required to demonstrate specific, articulable facts that support a reasonable suspicion that Murray operated his vehicle while under the influence of alcohol. *State v. Graff*, 6th Dist. Lucas No. L-11-1307, 2013-Ohio-2242, ¶ 15.

{¶ 20} Ohio courts recognize that a number of factors may supply an officer with reasonable suspicion to conduct field sobriety tests, including, but not limited to (1) the time of day that the stop occurred; (2) the area that the stop occurred; (3) whether there

7.

was erratic driving that might point to a lack of coordination; (4) the existence of a "cognizable report" that the driver might be intoxicated; (5) the appearance of the suspect's eyes; (6) impairments related to the individual's speech; (7) an odor of alcohol on the car or on the person; (8) the strength of that odor; (9) lack of coordination after the stop; (10) "the suspect's demeanor"; and (11) the suspect's admission of alcohol consumption. *State v. Evans*, 127 Ohio App.3d 56, 711 N.E.2d 761 (11th Dist.1998), fn. 2. In determining whether or not the officer has a reasonable suspicion we look at the totality of the circumstances and not to any one factor. *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991).

{¶ 21} It is often a close issue whether the specific facts of a case provide an officer with reasonable, articulable suspicion for conducting field sobriety tests. *State v. Beeley*, 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, ¶ 16. Such decisions are "very fact-intensive." *State v. Burkhart*, 4th Dist. No. 16CA8, 2016-Ohio-7534, 64 N.E.3d 1004, ¶ 15. Ohio courts often reach differing conclusions when faced with seemingly similar circumstances. The slightest difference between officers' descriptions of an encounter can form the basis for opposite outcomes.

{¶ 22} For instance, in *State v. Reed*, 7th Dist. Belmont No. 05 BE 31, 2006-Ohio-7075, the Seventh District concluded that an officer lacked reasonable articulable suspicion to perform field sobriety tests where it was 1:05 a.m., the driver's eyes were red and glassy, the officer observed a "slight" smell of alcohol, the driver admitted to

8.

drinking two beers, but the officer witnessed no signs of erratic driving or any other signs of impairment.

{¶ 23} Similarly, in *State v. Dixon*, 2d Dist. Greene No. 2000-CA-30, 2000 WL 1760664 (Dec. 1, 2000), the Second District found no reasonable, articulable suspicion to perform field sobriety tests where it was 2:20 a.m., the driver had glassy, bloodshot eyes and an odor of alcohol upon his person, and the driver admitted that he had consumed "one or two beers." The Second District reasoned that "[t]he mere detection of an odor of alcohol, unaccompanied by any basis, drawn from the officer's experience or expertise, for correlating that odor with a level of intoxication that would likely impair the subject's driving ability, is not enough to establish that the subject was driving under the influence. Nor is the subject's admission that he had had one or two beers." *Id.* at *2.

{¶ 24} The Second District recently declined to overrule *Dixon.* In *State v. Berry*, 2nd Dist. Montgomery No. 28199, 2019-Ohio-1254, ¶ 52, it reiterated its position that "traffic violations of a de minimus [sic] nature, combined with a slight odor of an alcoholic beverage, and an admission of having consumed a couple of beers, are insufficient to support a reasonable, articulable suspicion of driving under the influence." (Internal citations and quotations omitted.)

{¶ 25} But we have concluded that "[w]here a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion

9.

exists." *Beeley* at ¶ 16. *See also New London v. Gregg*, 6th Dist. Huron No. H-06-030, 2007-Ohio-4611, ¶ 19.

{¶ 26} In *Beeley*, the driver was stopped at 3:00 a.m. for driving 7 m.p.h. over the speed limit. He was not weaving or driving erratically, but when the trooper approached the vehicle to speak to the driver, he detected a "strong" odor of alcohol. The driver admitted to the trooper that he had been drinking an hour before, however, his speech was not slurred and his gait was not unsteady. We found that the strong odor of alcohol, combined with the driver's admission to drinking provided reasonable, articulable suspicion to conduct field sobriety tests.

{¶ 27} Similarly, in *Gregg*, the driver was stopped at 3:15 a.m. for suspicion of failure to properly display license plates, at which time the officer also noticed that the driver was not wearing a seat belt. During the stop, the officer perceived that the driver's eyes were "red, glassy," he smelled a "mild" to "moderate" odor of alcohol emanating from inside the vehicle, and the driver admitted to having a few beers. While the officer was not able to say whether the odor of alcohol was coming from the passenger, the vehicle, or the driver, and even though the driver's speech was not slurred and his driving was not impaired, we held that the officer had formed reasonable, articulable suspicion to perform field sobriety tests. *See also City of Akron v. Tomko*, 9th Dist. Summit No. 19253, 1999 WL 1037762, *3 (Nov. 3, 1999) (finding sufficient reasonable, articulable suspicion where driver was stopped for exceeding the speed limit by 10 m.p.h., had bloodshot eyes, smelled of alcohol, and admitted drinking two beers).

10.

{¶ 28} Here, it was 3:45 a.m. when Trooper Black encountered Murray, and he observed that Murray's eyes were red and glassy, Murray smelled of alcohol, and Murray admitted driving to the station and to having three beers three or four hours earlier. In response to questions by the defense, Trooper Black characterized the smell of alcohol as "strong" and Murray's movements as "lethargic." While Murray's speech was not slurred, his gait was steady, the trooper witnessed no traffic infractions or erratic driving, and the late hour could explain Murray's red eyes, Trooper Black's observations led him to believe that Murray was intoxicated. Under *Beeley* and *Gregg*, we conclude that considering the totality of these circumstances, the trooper's observations support a reasonable suspicion that Murray operated a vehicle while under the influence of alcohol.

{¶ 29} The Second District explained in *Berry*, 2d Dist. Montgomery No. 28199, 2019-Ohio-1254, that impairment cases require the trial court to weigh the evidence and determine credibility. There the trial court concluded that the officer lacked reasonable, articulable suspicion to believe that the defendant was driving under the influence, and the Second District emphasized that it was "reluctant to second guess the trial court's determination of this factual issue." (Internal citations and quotations omitted.) *Id.* at ¶ 18. While we find that the facts here present a close case, we too are reluctant to second guess the trial court's factual determinations.

11.

**D. Probable cause existed to arrest Murray with or without the PBT results.**

{¶ 30} Finally, Murray argues that "[s]everal courts have determined that the results of a portable breath test are not admissible, even for probable cause purposes." In advancing this argument, Murray ignores this court's decision in *State v. Henry*, 6th Dist. No. WD-09-092, 191 Ohio App.3d 151, 2010-Ohio-5171, 945 N.E.2d 544, ¶ 33, where we recognized that "'although a portable breath test may not be accurate enough for a per se violation as under R.C. 4511.19(A)(1)(d), * * * an officer is entitled to consider [its results] in weighing whether there exists probable cause to arrest.'" *Id.,* quoting *State v. Masters,* 6th Dist. No. WD-06-045, 2007-Ohio-7100, ¶ 16.

{¶ 31} Here, the results of the PBT were used only for purposes of weighing whether there existed probable cause to arrest—not as evidence of the OVI itself. Moreover, Trooper Black's observations of Murray, coupled with Murray's performance on the HGN test, supplied the trooper with probable cause to make an arrest even without the results of the PBT. *See State v. Bresson*, 51 Ohio St.3d 123, 130, 554 N.E.2d 1330 (1990) ("[A] properly qualified officer may testify at trial regarding a driver's performance on the HGN test as to the issues of probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol."). We reject Murray's contention that the trial court improperly considered the results of the PBT.

{¶ 32} Accordingly, we find that under the totality of the circumstances, during Trooper Black's initial consensual encounter with Murray, he developed reasonable, articulable suspicion to believe that Murray had been driving while intoxicated. He was,

12.

therefore, justified in detaining Murray to administer field sobriety tests, the results of which provided probable cause to arrest Murray for OVI. We find Murray's single assignment of error not well-taken.

### III. Conclusion

{¶ 33} We conclude that during his initial consensual encounter with Murray, Trooper Black developed reasonable, articulable suspicion to conduct field sobriety tests where he observed that Murray smelled of alcohol, Murray's eyes were red and glassy, and Murray admitted to having three beers three or four hours earlier. We reach this conclusion despite the fact that he did not observe any erratic driving, and Murray did not appear to stumble or slur his speech. The trial court did not err in denying Murray's motion to suppress evidence.

{¶ 34} Murray's only assignment of error is not well-taken. We affirm the May 30, 2018 judgment of the Bowling Green Municipal Court. Murray is ordered to pay the costs of this appeal under App.R 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.    _____
             JUDGE

Christine E. Mayle, P.J.

Gene A. Zmuda, J.    _____
CONCUR.             JUDGE

             _____
             JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.