[Cite as *State v. Rasheed*, 2021-Ohio-4509.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Sylvania

    Appellee

v.

Ranya M. Rasheed

    Appellant

Court of Appeals No. L-21-1065

Trial Court No. TRC 1903178

**<u>DECISION AND JUDGMENT</u>**

Decided: December 22, 2021

* * * * *

Daniel C. Arnold, Chief Prosecutor, City of Sylvania, for appellee.

Kati E. Tharp, for appellant.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} This is an appeal from the judgment of the Sylvania Municipal Court, finding appellant, Ranya Rasheed, guilty of operating a vehicle under the influence of

alcohol or drugs after she pled no contest to the same, and sentencing her to 180 days in jail, 177 days suspended. Because we find that the trial court properly denied appellant's motion to suppress, we affirm.

## A. Facts and Procedural Background

{¶ 2} On May 28, 2019, two police officers from the Sylvania Township Police Department responded to the Starbucks parking lot located at 5231 Monroe Street, Toledo, Ohio, after they received a complaint from an identified citizen, J.R., stating that he observed two individuals smoking marijuana in a parked black BMW. Upon arrival, the officers observed appellant, the driver of the vehicle, attempting to pull out of the parking lot and onto Monroe Street. A traffic stop ensued, at which the officers conducted field sobriety tests and determined that appellant was under the influence of marijuana. Appellant was ultimately issued a citation for operating her vehicle under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree.

{¶ 3} After pleading not guilty to the charged offense, appellant filed a motion to suppress on February 19, 2020. In her memorandum in support of her motion, appellant argued that the officers who stopped her did not have reasonable suspicion to believe she was under the influence of drugs, and thus had no legitimate grounds to ask her to submit to field sobriety tests. Concerning the officers' reliance upon J.R.'s reported observation of her use of marijuana prior to the stop, appellant contended that such reliance was misplaced since the officers made no attempt to determine the extent of J.R.'s knowledge

2.

of the odor of marijuana. Appellant also argued that the field sobriety tests were unreliable because they were not administered in accordance with National Highway Traffic Safety Administration (NHTSA) standards set forth in the NHTSA manual.

{¶ 4} On July 21, 2020, the matter proceeded to a hearing before a magistrate on appellant's motion to suppress. At the hearing, the state called three witnesses. Appellant did not call any witnesses.

{¶ 5} As its first witness, the state called J.R. During his testimony, J.R. indicated that he observed appellant smoking marijuana as she sat behind the wheel in her BMW sedan, which was parked next to his vehicle in the Starbucks parking lot. J.R. detected what he described as "the unmistakable odor" of marijuana emanating from appellant's vehicle as he approached his vehicle.

{¶ 6} Upon witnessing appellant smoking marijuana, J.R. exited his vehicle, called 911, and walked to the back of appellant's vehicle to read her license plate number to the dispatcher. During his conversation with the dispatcher, J.R. provided his name, address, and phone number.

{¶ 7} J.R. testified that appellant "sped off to the right heading towards Marshalls and then stopped for a moment and then continued around" after she noticed that he was standing behind her vehicle. Police officers arrived on the scene "within moments." J.R. departed from the parking lot, but he was contacted by law enforcement shortly thereafter and asked to return to make a statement. He complied.

3.

{¶ 8} For its second witness, the state called patrolman Justin Brackett of the Sylvania Township Police Department. Brackett was one of the officers who was dispatched to the Starbucks parking lot on May 28, 2019, following J.R.'s report that appellant was smoking marijuana in her vehicle. Brackett identified appellant's BMW sedan upon arrival in the shopping plaza that is adjacent to the Starbucks parking lot, noting that the license plate number on the vehicle matched the one provided by J.R. Thereafter, he initiated a traffic stop as appellant was attempting to pull out of the plaza and onto Monroe Street. On cross examination, Brackett acknowledged that the information provided by J.R. was his sole basis for initiating the traffic stop.

{¶ 9} Once stopped, Brackett approached the driver's side of appellant's vehicle and asked appellant to exit. Brackett testified that he detected an odor of marijuana emanating from the vehicle as he approached. As appellant exited her vehicle, Brackett detected an odor of marijuana coming from her. Brackett began to ask her identification questions and noticed that her behavior was "sluggish" and "abnormal." Brackett went on to describe appellant's demeanor in the following manner:

> Her behavior consistently looked like it would be something that it would be somebody that was under the influence of marijuana. Her eyes were glassy. I mean, her, she had the odor of marijuana coming from her person. She had a giggled response to many questions, or the questions that I had asked her and then it was somewhat of a delayed response or like a sluggish response to when she would answer my questions.

4.

{¶ 10} Based upon these observations, Brackett asked appellant to submit to field sobriety tests. Appellant complied, and Brackett administered the horizontal gaze nystagmus ("HGN") test, the walk and turn test, and the one-legged stand test. Appellant presented no clues of impairment from the HGN test, but Brackett explained that this was expected since "[t]ypically HGN your indicators of impairment follow in conjunction with alcohol." Brackett then administered the walk and turn test, and noticed that appellant lifted her arms greater than six inches from her body, in violation of Brackett's instructions, and also executed the turn in the wrong direction. Finally, Brackett testified that appellant's performance during the one-legged stand test did not provide any additional clues of impairment.

{¶ 11} For its final witness, the state called Brackett's partner, detective Randy Moll, who testified that he observed Brackett's administration of the field sobriety tests. According to Moll, who was training Brackett at the time of the stop, Brackett administered the tests in substantial compliance with NHTSA standards.

{¶ 12} After Brackett finished the field sobriety tests, Moll decided to conduct advanced roadside impaired driving enforcement ("ARIDE") tests. During his testimony, Moll explained his reasoning behind the decision to conduct ARIDE tests. Specifically, Moll testified that he had reason to believe appellant was under the influence of marijuana based upon the "very strong" odor of marijuana emanating from her person, as well as her "red, bloodshot eyes, very droopy eyelids, delayed speech, [and] lethargic" demeanor. Moll stated that field sobriety tests "are designed to detect impairment in

5.

alcohol-impaired drivers. It was our belief that [appellant] was impaired by THC in this case. So there is additional tests to observe characteristics, additional characteristics of someone who is THC impaired."

{¶ 13} The additional testing conducted by Moll involved asking appellant to open her mouth and stick out her tongue. According to Moll, a marijuana-impaired individual oftentimes presents with a dry mouth and a thick coating of saliva on the tongue, which was present with appellant. Further, Moll stated that he had appellant tilt her head back and close her eyes to check for eyelid tremors that are characteristic of marijuana impairment. Such eyelid tremors, according to Moll, were "very distinct in [appellant]." Moreover, appellant's right eye did not converge when stimulated to do so, which Moll identified as another indicator of marijuana impairment.

{¶ 14} Based upon their observations of appellant before and during the foregoing tests, Brackett and Moll determined that she was under the influence of marijuana and decided to arrest her.

{¶ 15} At the conclusion of the hearing on appellant's motion to suppress, the trial court took the matter under advisement. On October 9, 2020, the magistrate issued her decision denying appellant's motion. In her decision, the magistrate found that Brackett and Mole possessed reasonable suspicion to initiate the traffic stop based solely upon the information provided by J.R. Further, the magistrate determined that the officers had reasonable suspicion to conduct field sobriety tests given their detection of a strong odor of marijuana coming from the vehicle and appellant's person, appellant's red and glassy

6.

eyes, and appellant's lethargic behavior. Finally, the magistrate concluded that appellant's arrest was supported by probable cause in light of the officers' observations of appellant's condition and demeanor, as well as Moll's observance of appellant while she was undergoing ARIDE testing.

{¶ 16} Upon receipt of the magistrate's decision, appellant requested findings of fact and conclusions of law. On December 3, 2020, the magistrate issued her findings of fact and conclusions of law. Three months later, on March 8, 2021, appellant appeared before the trial court and pled no contest to operating a vehicle under the influence of alcohol or drugs. The trial court accepted appellant's plea, found her guilty of the charged offense, and sentenced her to 180 days in jail, 177 days suspended. Appellant's timely notice of appeal followed.

## B. Assignments of Error

{¶ 17} On appeal, appellant assigns the following error for our review:

> 1. The Trial Court erred in denying the defendant's Motion to Suppress.

## II. Analysis

In her sole assignment of error, appellant argues that the trial court erred in denying her motion to suppress.

## A. Standard of Review

{¶ 18} Our review of the trial court's denial of appellant's motion to suppress "presents a mixed question of law and fact." *State v. Wesson*, 137 Ohio St.3d 309, 2013-

7.

Ohio-4575, 999 N.E.2d 557, ¶ 40, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's factual findings if they are supported by competent credible evidence, and "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Wesson* at ¶ 40, quoting *Burnside* at ¶ 8.

{¶ 19} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, guarantee a person's right to be free from unreasonable searches and seizures. *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). The temporary detention of a motorist during a traffic stop is a seizure and thus implicates the foregoing constitutional protections. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

### B. Appellant's Arguments

{¶ 20} The facts are not in dispute in this case. At the suppression hearing, the arresting officers acknowledged that their sole justification for initiating the traffic stop was the information J.R. provided to the dispatcher. Once the traffic stop was initiated and the officers encountered appellant for themselves, they detected the odor of marijuana emanating from appellant's person and determined that they possessed the requisite reasonable suspicion to prolong the traffic stop for the purpose of conducting field sobriety tests. After completing the field sobriety tests, Brackett and Moll determined that appellant was driving under the influence of marijuana and decided to arrest her.

8.

{¶ 21} Against the backdrop of these uncontested facts, appellant advances several arguments to support her contention that the trial court erroneously denied her motion to suppress. First, appellant contends that the information provided by J.R. was not sufficient to give Brackett and Moll reasonable suspicion to effectuate a traffic stop. Second, appellant argues that the officers lacked reasonable suspicion to conduct field sobriety tests. Third, appellant asserts that the officers had no probable cause to arrest her based upon the results of the field sobriety tests. We will address these arguments in turn.

### i. Reasonable Suspicion to Justify the Traffic Stop

{¶ 22} In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that a police officer may stop an individual when the officer has a reasonable suspicion, supported by specific and articulable facts and rational inferences from those facts, that the individual is engaged in criminal activity. *See also Navarette v. California*, 572 U.S. 393, 396, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014), quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) ("The Fourth Amendment permits brief investigative stops – such as the traffic stop in this case – when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'"); *State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, ¶ 19.

9.

{¶ 23} "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" *Navarette* at 397, quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Further, the reasonable suspicion standard involves a consideration of the totality of the circumstances and requires "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less" than is necessary for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

{¶ 24} In *Tidwell*, *supra*, the Ohio Supreme Court recognized that reasonable suspicion may be based upon information supplied by another person, so long as that information bears some indicia of reliability. *Tidwell* at ¶ 24, citing *Navarette* at 397. In an earlier decision, the Ohio Supreme Court explained that when a traffic stop is based entirely upon information provided by an informant, "the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip." *Maumee v. Weisner*, 87 Ohio St.3d 295, 299, 720 N.E.2d 507 (1999). "The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop." *Id*.

{¶ 25} The reliability of information provided by informants is impacted by the classification of the informant. Three categories of informants have been identified by the Ohio Supreme Court, and we recently articulated these categories as

10.

a citizen informant, who has witnessed criminal activity and is presumed

credible; a known informant, who is generally part of the "criminal milieu"

and the affiant must attest to the informant's veracity, reliability, or basis of

knowledge or must independently corroborate the information; and an

anonymous informant, generally considered unreliable and requires

independent police corroboration.

*State v. Connin*, 6th Dist. Fulton No. F-20-005, 2020-Ohio-6867, ¶ 18, citing *State v. Long*, 2020-Ohio-4090, 157 N.E.3d 362, ¶ 24-27 (6th Dist.).

{¶ 26} Here, the parties agree that J.R. was an identified citizen eyewitness. Indeed, J.R. testified at the suppression hearing that he provided his name, address, and phone number during his conversation with the 911 dispatcher. As such, J.R. was clearly a citizen informant. *See Weisner* at 302 (informant was classified as a citizen informant where he provided his name and phone number during a phone conversation with a police dispatcher).

{¶ 27} The classification of J.R. as a citizen informant is important, even though it "does not itself determine the outcome of this case," and is only "one element of our totality of the circumstances review of this informant's tip, weighing in favor of the informant's reliability and veracity." *Weisner* at 302; *see also Tidwell* at ¶ 39 (cautioning that the "categorical classifications of informants may be instructive but are not necessarily outcome determinative"). As the report of criminal activity (i.e. smoking

11.

marijuana) received by dispatch and passed along to Brackett and Moll came from a citizen informant, it is presumptively reliable.

{¶ 28} Appellant argues that such presumptive reliability should be set aside in this case because J.R. merely *assumed* the substance appellant was smoking was marijuana, and J.R. had no way of actually knowing whether it was marijuana. Appellant's argument ignores the degree of confidence J.R. expressed in his conclusion that appellant was smoking marijuana in her vehicle. J.R. testified that he detected an obvious odor of marijuana emanating from appellant's vehicle as he approached the vehicle. Further, J.R. indicated that appellant appeared to be smoking marijuana based upon her placement of what appeared to be a marijuana joint to her lips. While perhaps J.R. could not be *certain* of his conclusion that appellant was smoking marijuana, his observations were nonetheless reliable.

{¶ 29} Like the informant in *Weisner*, J.R. personally observed the facts he reported to the police dispatcher. "Typically, a personal observation by an informant is due greater reliability than a secondhand description." *Id.*, citing *Illinois v. Gates*, 462 U.S. 213, 233-234, 103 S.Ct. 2317, 76 L.Ed.2d 527. J.R. reported his firsthand observations to the police dispatcher immediately after making them. Such immediacy "lends further credibility to the accuracy of the facts being relayed, as it avoids reliance upon the informant's memory." *Id.*

12.

**{¶ 30}** The court in *Weisner* also looked to the motivation of the informant to assist in its reliability determination. The court observed that the informant was making his report from the perspective of a motorist sharing the road with another motorist and inferred from those circumstances that the informant was motivated, "not by dishonest and questionable goals, but by his desire to eliminate a risk to the public's safety." *Id.* The court found that such a motivation supported the reliability of the informant's tip. We find that J.R. was similarly motivated in this case, which further buttresses the reliability of the information J.R. provided to law enforcement.

**{¶ 31}** Upon consideration of the totality of the circumstances in this case, we find that the information provided by J.R. was sufficiently reliable to justify a traffic stop. J.R. is a presumptively reliable identified citizen whose tip was based upon his personal observation and his desire to protect the roadways from intoxicated drivers. This reliable tip was sufficient, standing alone, to give rise to a reasonable suspicion that appellant was engaged in criminal activity and thereby permit Brackett and Moll to initiate the traffic stop. Consequently, we reject appellant's first argument that the information provided by J.R. was not sufficient to give the officers reasonable suspicion in order to effectuate the traffic stop.

### ii. Reasonable Suspicion to Conduct Field Sobriety Tests

**{¶ 32}** In his second argument, appellant contends that Brackett and Moll lacked reasonable suspicion to prolong the traffic stop in order to conduct field sobriety tests.

13.

{¶ 33} Field sobriety testing of a driver constitutes a seizure under the Fourth Amendment and must be "'separately justified by specific, articulable facts showing a reasonable basis for the request'" to conduct such testing. *Bowling Green v. Murray*, 6th Dist. Wood No. WD-18-045, 2019-Ohio-4285, ¶ 19, quoting *State v. Trevarthen*, 11th Dist. Lake No. 2010-L-046, 2011-Ohio-1013, ¶ 15. "Although the facts that served as the impetus for the stop may also assist in providing this separate justification, additional articulable facts are necessary." *State v. Evans*, 127 Ohio App.3d 56, 62-63, 711 N.E.2d 761 (11th Dist.1998), citing *State v. Yemma*, 11th Dist. Portage No. 95-P-0156, 1996 WL 495076 (Aug. 9, 1996). Consequently, in order to justify the field sobriety tests, Brackett and Moll were required to provide additional specific, articulable facts supporting a reasonable suspicion that appellant operated her vehicle while under the influence of marijuana. *State v. Dye*, 2021-Ohio-3513, --- N.E.3d ----, ¶ 64 (6th Dist.), citing *State v. Graff*, 6th Dist. Lucas No. L-11-1307, 2013-Ohio-2242, ¶ 15.

{¶ 34} In *Murray*, *supra*, we set forth some of the factors that Ohio courts have relied upon to determine whether an officer has reasonable suspicion to conduct field sobriety tests. In particular, we stated:

Ohio courts recognize that a number of factors may supply an officer with reasonable suspicion to conduct field sobriety tests, including, but not limited to (1) the time of day that the stop occurred; (2) the area that the stop occurred; (3) whether there was erratic driving that might point to a lack of coordination; (4) the existence of a 'cognizable report' that the

14.

driver might be intoxicated; (5) the appearance of the suspect's eyes; (6) impairments related to the individual's speech; (7) an odor of alcohol on the car or on the person; (8) the strength of that odor; (9) lack of coordination after the stop; (10) "the suspect's demeanor"; and (11) the suspect's admission of alcohol consumption."

*Murray* at ¶ 20, citing *Evans* at 63, fn. 2; *see also Dye* at ¶ 65, and *State v. Wysong*, 6th Dist. WD-21-009, 2021-Ohio-3516, ¶ 20 (setting forth the same factors first summarized by the Eleventh District in *Evans*).

{¶ 35} Upon application of these factors to the facts of this case, we find that several of the factors (factors five, six, seven, eight, and ten) weigh in favor of a finding of reasonable suspicion. Brackett and Moll initially stopped appellant upon receiving J.R.'s report that she was smoking marijuana. Brackett testified that he detected an odor of marijuana coming from appellant's vehicle as he approached. After appellant exited the vehicle, Brackett continued to detect the odor of marijuana on her person. Brackett further testified that he noticed appellant acting "sluggish" and "abnormal" as he interacted with her. Additionally, Brackett observed that appellant's eyes were glassy. Similarly, Moll testified that he had reason to believe appellant was under the influence of marijuana based upon her "red, bloodshot eyes, very droopy eyelids, delayed speech, [and] lethargic" demeanor.

{¶ 36} In its decision denying appellant's motion to suppress, the magistrate determined that the officers had reasonable suspicion to conduct field sobriety tests given their detection of a strong odor of marijuana coming from the vehicle and appellant's person, appellant's red and glassy eyes, and appellant's lethargic behavior. In light of the record in this case, we agree with the magistrate's determination.

{¶ 37} The officers' observations of appellant prior to the field sobriety testing, coupled with J.R.'s eyewitness report of appellant's marijuana consumption, provided the officers with a reasonable basis to believe that appellant was under the influence of marijuana. Thus, the officers' request to conduct field sobriety testing was supported by reasonable suspicion and did not violate appellant's Fourth Amendment rights. Appellant's argument to the contrary is without merit.

### iii. Probable Cause to Arrest

{¶ 38} In appellant's third argument, she asserts that Brackett and Moll were without probable cause to arrest her based upon the results of the field sobriety tests they conducted in this case.

{¶ 39} In order to determine whether Brackett and Moll had probable cause to arrest appellant, we must consider whether, at the time of the arrest, they "had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that [appellant] was driving under the influence." (Citation omitted.) *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), *superseded by statute on other grounds* as stated in R.C. 4511.19(D)(4)(b).

16.

"Probable cause to arrest does not have to be based, in whole or part, on the results of field sobriety tests." *State v. Masin*, 6th Dist. Erie No. E-20-004, 2020-Ohio-6780, ¶ 33, citing *Homan* at 427.

{¶ 40} Here, appellant argues that the results of the field sobriety tests conducted by Brackett did not support the probable cause determination that she was under the influence of marijuana at the time of the traffic stop. Further, appellant contends that Moll's administration of ARIDE tests did not reveal "any physiological signs that her driving abilities, coordination, balance, etc. were in any way impaired such that [the probable cause] standard is unmet."

{¶ 41} At the outset, we reiterate that probable cause to believe a driver is operating her vehicle while under the influence of alcohol or a drug of abuse may arise independent of field sobriety testing. *Masin* at 33. This is true even where a defendant passes field sobriety tests. *State v. Krzemieniewski*, 9th Dist. Medina No. 15CA0015-M, 2016-Ohio-4991, ¶ 17 ("The fact that Krzemieniewski passed the field sobriety tests does not negate the other indicia of impairment observed by Officer Harrison."). To prove impairment of a defendant's driving ability, "the state can rely not only on coordination tests such as the field sobriety tests but also on physiological factors such as slurred speech, bloodshot eyes, and the odor of [marijuana]." *Cleveland v. Giering*, 2017-Ohio-8059, 98 N.E.3d 1131, ¶ 30 (8th Dist.), citing *Solon v. Hrivnak*, 8th Dist. Cuyahoga No. 100411, 2014-Ohio-3135, ¶ 17.

17.

{¶ 42} In this instance, Brackett and Moll each testified as to their detection of a strong odor of marijuana prior to the initiation of field sobriety tests, as well as their observation of appellant's red and glassy eyes, sluggish behavior, and giggly responses to Brackett's questioning. These facts, together with the officers' knowledge of J.R.'s eyewitness report that appellant was smoking marijuana just moments earlier, are sufficient to give rise to a prudent person's belief that appellant was driving under the influence. Therefore, we find that probable cause existed independent of the results of the field sobriety tests. *See State v. Aiken*, 6th Dist. Fulton No. F-21-005, 2021-Ohio-3503, ¶ 25 (probable cause to arrest for operating a vehicle while under the influence of alcohol existed without field sobriety testing where the defendant was driving erratically, officers detected an odor of alcohol, and the defendant's eyes were glossy); *see also Krzemieniewski* at ¶ 19 (finding probable cause, notwithstanding the fact that defendant passed field sobriety tests, where the defendant had bloodshot and glossy eyes, admitted having smoked marijuana recently, the arresting officer observed the defendant commit a marked lanes violation, and the officer detected an odor of raw marijuana).

{¶ 43} Moreover, we find that the results of the field sobriety tests, especially the ARIDE tests, further strengthened the officers' belief that appellant was driving under the influence. Indeed, according to the officers' testimony at the suppression hearing, appellant failed the walk and turn test and exhibited physiological symptoms of marijuana impairment, including a dry mouth and a thick coating of saliva on the tongue, "very distinct" eyelid tremors, and a failure of appellant's right eye to converge upon

18.

stimulation. While appellant passed the HGN test and the one-legged stand test, Brackett testified that the tests he administered are designed to reveal alcohol impairment, not marijuana impairment, and thus passing these tests was not necessarily indicative of sobriety in this case. Likewise, Moll explained that his decision to conduct ARIDE tests was based on the recognition that the field sobriety tests conducted by Brackett were designed to detect alcohol impairment, while appellant was suspected of marijuana impairment.

{¶ 44} In sum, we find that the totality of the circumstances, including the arresting officers' detection of a strong odor of marijuana, appellant's red and glassy eyes, sluggish behavior, and giggly responses, J.R.'s eyewitness report of appellant's smoking of marijuana moments before the arrest, appellant's failure of the walk and turn test, and Moll's observation of several physiological indicators of marijuana impairment, were sufficient to warrant Brackett and Moll in believing that appellant was under the influence of marijuana. Thus, we reject appellant's argument that the officers had no probable cause to arrest her for operating her vehicle under the influence of marijuana.

{¶ 45} Having already found that the traffic stop and field sobriety tests in this case were supported by reasonable suspicion, and in light of our determination that appellant's arrest was supported by probable cause, we find that the trial court properly denied appellant's motion to suppress. Accordingly, we find appellant's sole assignment of error not well-taken.

19.

## III. Conclusion

In light of the foregoing, the judgment of the Sylvania Municipal Court is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

_____

Gene A. Zmuda, P.J.
CONCUR.

JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.