[Cite as *State v. Clinger*, 2022-Ohio-723.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                    Court of Appeals No.  E-21-028

      Appellant                              Trial Court No.  TRC2102332

v.

Curtis R. S. Clinger                        **DECISION AND JUDGMENT**

      Appellee                                Decided:  March 11, 2022

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellant.

L. Scott Petroff, for appellee.
.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} Appellant, State of Ohio, appeals the August 18, 2021 judgment of the Erie County Municipal Court's granting of appellant, Curtis R.S. Clinger's motion to suppress evidence.  For the following reasons, we affirm the trial court's judgment.

## A. Facts and Procedural Background

**{¶ 2}** On April 10, 2021, appellee reported that he was involved in an accident while traveling on State Route 250 in Erie County, Ohio. Appellee immediately exited the roadway and pulled into a parking lot. The other vehicle did not stop. Erie County Sheriff's Department Deputy Brett Szakats responded to appellee's report. During the course of his investigation of the accident, Deputy Szakats believed that appellee exhibited signs he was operating his vehicle under the influence of a narcotic. He then asked appellee to perform several field sobriety tests. Appellee agreed. Szakats determined that appellee exhibited signs of intoxication during his performance of those tests and arrested him for operating a vehicle while intoxicated ("OVI") in violation of R.C. 4511.19(A)(1)(a).

**{¶ 3}** Appellee was arraigned on April 12, 2021, and entered a not guilty plea. On July 13, 2021, appellee filed a motion to suppress all evidence collected through the field sobriety tests. Specifically, appellee argued that Szakats did not have a reasonable, articulable suspicion that he was under the influence of narcotics and, therefore, did not have a sufficient basis to ask him to perform field sobriety tests. Appellee also argued that the field sobriety tests were not administered in accordance with the National Highway Traffic Safety Administration (NHTSA) standards set forth in the NHTSA manual, rendering them unreliable.

**{¶ 4}** At the August 2, 2021 hearing on appellee's motion to suppress, the state called Szakats as its sole witness. Szakats testified that he approached appellee's vehicle

2.

twice during the entire encounter. Szakats's initial approach was not recorded as his body camera was in photograph mode for purposes of investigating the accident. Szakats's second conversation with appellee was recorded. During his testimony, Szakats did not specify whether his observations which the state alleges supports the administration of field sobriety tests occurred during his first or second conversation with appellee.

{¶ 5} When describing the observations on which he based his request, Szakats testified that "it looked like as if [appellee] was falling asleep, very drowsy, very sluggish * * * almost like he was under the influence of a—what I believed to be a narcotic at that point." Szakats also testified that appellee's "[e]yelids were droopy, [his] speech was slurred, slowed," and "[h]is eyes looked to be glassy/bloodshot." Finally, Szakats testified that he smelled raw marijuana while speaking to appellee. Based on these factors and his "previous training and experience" investigating OVIs, Szakats suspected appellee was under the influence of narcotics and asked him to exit his vehicle and submit to field sobriety tests.

{¶ 6} Appellee complied and Szakats administered the horizontal gaze nystagmus test (HGN) and the walk and turn test. During the HGN test, Szakats observed appellee exhibiting "six out of six clues of impairment." Szakats testified that during the walk and turn test he observed appellee "began the test several times prior to [Szakats] advising him to do so" and, on his first attempt, appellee "walked backwards at one point after the first series of nine steps." Appellee then asked for a second attempt but stopped halfway

3.

through. Szakats testified that appellee's conduct during the walk and turn test were additional indicators that he was impaired. At the conclusion of Szakats's direct examination, the state played a recording of the second conversation which was then admitted into evidence without objection from appellee.

{¶ 7} On cross-examination, Szakats testified that appellee stated that he had been at a water park all day prior to the accident. Szakats conceded that this, along with the fact that the stop occurred at night, provided a plausible explanation for appellee's tired appearance.

{¶ 8} At the conclusion of the hearing, the trial court granted the state's request that the parties be permitted to submit additional briefs addressing case authority referenced at the hearing. The state filed its supplemental brief on August 6, 2021. Appellee filed his supplemental brief on August 11, 2021.

{¶ 9} On August 18, 2021, the trial court granted appellee's motion to suppress. The trial court noted its review of the video of the incident and stated "[t]he court does not notice any slurred speech." The trial court, therefore, concluded that "at the time the deputy removes [appellee] from his automobile, the clues of impairment were the condition of his eyes (bloodshot/glassy), his tired appearance, and the smell of raw marijuana of unknown strength." The trial court found that these factors did not provide Deputy Szakats with a reasonable, articulable suspicion that appellee was operating a

4.

vehicle while intoxicated and suppressed the results of the field sobriety tests from being introduced as evidence at trial.[1]

## B. Assignments of Error

{¶ 10} Appellant timely appealed the trial court's interlocutory order, pursuant to R.C. 2945.67 and Crim.R. 12(K), and asserts the following error for our review:

> The trial court erred by granting the Defendant's Motion to Suppress where there was a reasonable, articulable suspicion to warrant administering field sobriety tests.

## II. Law and Analysis

{¶ 11} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Colby,* -- N.E.3d --, 2021-Ohio-4405 (6th Dist.), citing *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Burnside* at ¶ 8, citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent credible evidence". *Id.* at ¶ 8. "Accepting these facts as true, the appellate court must then independently, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

---

[1] The trial court's decision rendered appellee's second argument regarding Szakats's alleged failure to comply with the NHTSA manual when administering the tests moot.

5.

**{¶ 12}** Here, the applicable legal standard involves a peace officer's ability to extend a consensual encounter with a motorist for the purpose of determining whether that individual was operating a vehicle while intoxicated. A peace officer's extension of a consensual encounter implicates the motorist's constitutional right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution. *State v. Watkins,* 6th Dist. Wood No. WD-20-054, 2021-Ohio-1443, ¶ 19-22; *see also State v. Rasheed,* 6th Dist. Lucas No. L-21-1065, 2021-Ohio-4509, ¶ 19, citing *State v. Orr,* 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). Therefore, a peace officer's extension of a consensual encounter to "request that a driver perform field sobriety tests 'must be separately justified by specific, articulable facts showing a reasonable basis for the request.'" *Watkins* at ¶ 25, citing *State v. Trevarthen,* 11th Dist. Lake No. 2010-L-046, 2011-Ohio-1013, ¶ 19. "Whether a request to perform field sobriety tests was reasonable is to be considered under the totality of the circumstances." *Id.*

**{¶ 13}** The state challenges both the trial court's findings of fact and its conclusion that those facts did not provide Szakats with reasonable, articulable suspicion appellee was intoxicated. We address these issues in turn.

### a. Competent, credible evidence supports the trial court's factual conclusions.

**{¶ 14}** After hearing Szakats's testimony, and viewing the available video of Szakats's interaction with appellee, the trial court found that "at the time the deputy removes [appellee] from his automobile, the clues of impairment were the condition of

6.

his eyes (bloodshot/glassy), his tired appearance, and the smell of raw marijuana of unknown strength." The trial court also determined that after viewing the video, "[t]he Court does not notice any slurred speech" and, as a result, did not consider slurred speech as a basis for Szakats's extension of his consensual encounter with appellee.

{¶ 15} The state argues that the trial court erred when it found appellee's speech was not slurred. Importantly, the state does not directly challenge the trial court's conclusion that appellee's speech in the available video was not slurred. Instead, the state argues that the trial court should have determined appellee's speech was slurred, despite the video evidence, because Szakats testified that he observed slurred speech during his initial, unrecorded encounter with appellee. Put simply, the state argues that Szakats's testimony alone warranted the conclusion that appellee's speech was slurred. We disagree.

{¶ 16} When reviewing the trial court's order on a motion to suppress we *must accept* the trial court's factual conclusions as long as they are supported by competent, credible evidence. *Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71 at ¶ 8. Having reviewed the video, we find there was competent, credible evidence to support the trial court's conclusion that appellee's speech was not slurred prior to Szakats's request that he exit his vehicle. The fact that Szakats provided testimony to the contrary does not negate the competent, credible evidence observed in the video, particularly since the trial court was "in the best position to resolve factual questions and evaluate the

7.

credibility of witnesses." *Id.* Therefore, we accept the trial court's finding that appellee's speech was not slurred prior to being asked to perform field sobriety tests.

{¶ 17} The state also argues that the trial court should have considered additional factors which supported Szakats's reasonable suspicion that appellee was intoxicated. The state alleges the trial court also should have considered the time of day when the encounter occurred, the fact that appellee had been in an accident, and the fact that appellee's shirt was on backwards as indicia of appellee's intoxication. Szakats, however, did not identify these additional factors as the basis for his request appellee perform field sobriety tests. Instead, Szakats identified only four bases on which he asked appellee to perform field sobriety tests—that is, appellee's slurred speech, glassy eyes, tired appearance, and the odor of raw marijuana.

{¶ 18} A peace officer's request that an individual perform field sobriety tests following a consensual encounter must be "separately justified by *specific,* articulable facts showing a reasonable basis for the request[.]" *State v. Rasheed,* 6th Dist. Lucas No. L-21-1065, 2021-Ohio-4509, ¶ 33, citing *Bowling Green v. Murray,* 6th Dist. Wood No. WD-18-045, 2019-Ohio-4285, ¶ 19 (emphasis added). Szakats's testimony clearly shows that he did not base his request of appellee to perform field sobriety tests on the fact that appellee had been in an accident or the time at which their encounter occurred. Additionally, Szakats testified that he did not observe that appellee's shirt was on backwards until *after* he asked appellee to exit his vehicle to perform the tests. As these

8.

factors were not the "specific, articulable facts" on which Szakats based his request, the trial court did not err in failing to consider these additional factors.

{¶ 19} In sum, the trial court's finding that appellee's speech was not slurred was based on competent credible evidence and Szakats's testimony precluded the trial court from considering the additional factors advanced by the state as the basis for Szakats's request appellee perform field sobriety tests. As a result, the trial court did not err in finding that the only factors to be considered to determine whether appellee was intoxicated were his glassy eyes, tired appearance, and the odor of raw marijuana.

> **b. The trial court did not err in finding a lack of specific, articulable suspicion that appellee was operating a vehicle under the influence of narcotics.**

{¶ 20} As the trial court did not err in reaching its factual conclusions, we turn to the trial court's determination of whether those facts satisfied the applicable legal standard. The trial court's application of facts to the applicable legal standard when ruling on a motion to suppress is a question of law which we review de novo. *State v. Daoust,* 6th Dist. Lucas No. L-21-1055, 2021-Ohio-4400, ¶ 31.

{¶ 21} In *Bowling Green v. Murray,* 6th Dist. Wood No. WD-18-045, 2019-Ohio-4285, ¶ 19, we set forth some of the factors Ohio courts have relied on to determine whether an officer has reasonable suspicion to conduct field sobriety test. These include, but are not limited to:

> (1) the time of day that the stop occurred; (2) the area that the stop
>
> occurred; (3) whether there was erratic driving that might point to a lack of

9.

coordination; (4) the existence of a 'cognizable report' that the driver might be intoxicated; (5) the appearance of the suspect's eyes; (6) impairments related to the individual's speech; (7) an odor of alcohol on the car or on the person; (8) the strength of that odor; (9) lack of coordination after the stop; (10) "the suspect's demeanor"; and (11) the suspect's admission of alcohol consumption.

*Id.* at ¶ 20, citing *State v. Evans,* 127 Ohio App.3d 56, 63, 711 N.E.2d 761 (11th Dist.1998). While not explicitly identified in these factors, the odor of raw marijuana, has also been included as a factor to be reviewed under the "totality of the circumstances" for reasonable suspicion to conduct field sobriety tests. *See State v. Fitzgerald,* 2020-Ohio-4346, 158 N.E.3d 664, ¶ 17 (9th Dist.); *State v, Kopp,* 2017-Ohio-4428, 93 N.E.3d 199, ¶22; and *State v. Krzemieniewski,* 9th Dist. Medina No. 15CA0015-M, 2016-Ohio-4991, ¶ 19 (holding that raw marijuana was a factor to consider in determining whether the arresting officer had probable cause to arrest an individual for OVI – a higher burden than the reasonable articulable suspicion to conduct field sobriety tests).

{¶ 22} We previously held that where "the odor of alcohol is combined with glassy or bloodshot eyes *and further indicia of intoxication"* are present, "reasonable suspicion exists." *State v. Colby,* -- N.E.3d --, 2021-Ohio-4405, ¶ 18, citing *State v. Beely,* 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, ¶ 16 (emphasis sic.). However, "without additional indicia of intoxication, 'we tend to find that the odor of alcohol and

10.

bloodshot, glassy eyes—standing alone—are insufficient to provide reasonable suspicion for field sobriety tests.'" *Id.* at ¶ 69.

{¶ 23} Applying our holding in *Colby* to the present facts, we find that Szakats's reliance on the odor of raw marijuana and the condition of appellee's eyes, without further indicia of intoxication, are insufficient to show that he had a reasonable, articulable suspicion that appellee was operating his vehicle while intoxicated. Therefore, we find that the trial court did not err in finding Szakats lacked a sufficient basis to request appellee perform field sobriety tests and granting the motion to suppress all related evidence.

### III. Conclusion

{¶ 24} We find the state's assignment of error not well-taken. We therefore affirm the August 18, 2021 judgment of the Erie County Municipal Court.

{¶ 25} Appellant is ordered to pay the costs of this appeal pursuant to App.R.24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                      _____

                                                              JUDGE

Christine E. Mayle, J.            

                                       _____

Gene A. Zmuda, J.                                JUDGE
CONCUR.

                                       _____

                                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.