[Cite as *State v. Martorana*, 2023-Ohio-662.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY


State of Ohio                                    Court of Appeals No.  S-22-011

      Appellee                           Trial Court No.  21-TRC-3644

v.

Alisha Martorana                          **DECISION AND JUDGMENT**

      Appellant                          Decided:  March 3, 2023

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Otero, Assistant Prosecuting Attorney, for appellee.

Nathan VanDenBerghe, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Alisha Martorana, appeals the May 13, 2022 judgment

of the Sandusky County Court #1, convicting her of operating a vehicle while under the

influence of drugs or alcohol and driving left of center, and denying her motion to

suppress evidence.  For the following reasons, we affirm the trial court judgment.

## I.    Background

{¶ 2} Alisha Martorana was charged with operating a vehicle while under the influence of drugs or alcohol, a violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor, and driving left of center, a violation of R.C. 4511.25, a minor misdemeanor.  She filed a motion to suppress evidence, which the trial court denied in a judgment entered February 15, 2022.  After her motion was denied, Martorana entered a plea of no contest to both charges.  The trial court found her guilty and sentenced her to 180 days in jail with 170 days suspended.  Her conviction and sentence were memorialized in a judgment entered on May 13, 2022.

{¶ 3} According to the evidence presented at the suppression hearing, on August 3, 2021, at approximately 10:00 p.m., Trooper Rebecca Tent, of the Ohio State Highway Patrol, was dispatched to a reckless operation call on U.S. Route 6 near County Road 298.  The caller—who provided his name and phone number—reported that he was following behind a vehicle that was being operated recklessly, unable to maintain its lane, driving westbound on U.S. Route 6.  Tent was driving eastbound, and observed the vehicle veer left of center into her lane—half a car length over the centerline—prompting her to apply her brakes to avoid being hit.  She pulled around into the westbound lane and caught up to the vehicle.  The vehicle was "bouncing between the lanes" and following too closely behind the truck in front of it.  Tent activated her lights to initiate a stop of the

2.

vehicle.  When the vehicle did not immediately pull over, Tent activated her sirens, and the vehicle pulled to the side of the road.

{¶ 4} Upon approaching the vehicle, the driver—Alicia Martorana—told Tent, "I don't blame you for stopping me."  She said she was tired.  Tent asked for her driver's license and, at some point, requested her registration and proof of insurance.  Martorana began reaching around in the vehicle, looking for her driver's license.  Not able to see exactly where Martorana was reaching, Tent told her to stop reaching around and just give her her social security number; Martorana complied.  Tent again asked for her registration and Martorana produced an image of her insurance card from her cellphone.  Tent observed that Martorana's eyes were red, bloodshot, and glassy.

{¶ 5} Based on the information known to Tent at that time—the reckless operation call, Martorana driving left of center, driving too closely behind the truck, and "bouncing" within her lane, her red eyes, her demeanor, her reaching around and inability to focus on one task, and her presentation of her insurance card instead of her registration—Tent suspected that Martorana was under the influence of drugs, and she ordered Martorana out of the vehicle to determine whether she was impaired.

{¶ 6} Before performing any field-sobriety tests, Tent asked Martorana if she had any recent head or neck injuries or was currently taking any prescription medications.  Martorana told Tent that she had a hip replacement and was currently taking antidepressants, acid medication, and suboxone.

3.

**{¶ 7}** Tent administered the horizontal and vertical gaze nystagmus tests ("HGN" and "VGN") and observed four clues of impairment. She attempted to administer the walk-and-turn and one-leg-stand tests, but Martorana was having problems following instructions and was so unbalanced that Tent was concerned about her performing these tests so close to the roadway. Martorana attributed her inability to perform the tests to her hip surgery, but also told Tent, "I couldn't even do this sober." Tent determined that she had probable cause and arrested Martorana for operating a vehicle while under the influence of drugs or alcohol ("OVI"). The recording from Tent's dashboard camera was presented at the hearing.

**{¶ 8}** Following her conviction and sentencing, Martorana appealed. She assigns a single error for our review:

> The Trial Court erred when it denied Appellant's Motion to
> Suppress Evidence.

## II.    Law and Analysis

**{¶ 9}** Martorana's sole assignment of error challenges the constitutionality of the initial traffic stop and the trooper's continued detention of her for the purpose of conducting field sobriety tests. She argues that Tent lacked probable cause or reasonable articulable suspicion for either. She maintains that the trial court erred when it denied her motion to suppress evidence.

{¶ 10} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When the trial court considers a motion to suppress, it acts as the factfinder and is in the best position to resolve factual questions and to evaluate the credibility of witnesses. *Id.* We, therefore, must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Our role then is to independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. *Id.*

{¶ 11} The trial court made findings of fact in its judgment denying Martorana's motion. It found that Tent was dispatched based on a call from a truck driver who observed Martorana driving recklessly in the westbound lane of U.S. Route 6. While driving eastbound, Tent observed the vehicle veer half a car width into her lane of travel, prompting her to brake to avoid a collision. Tent turned around into the westbound lane and once she was behind Martorana, she observed that she was following too closely behind a semi-truck and "drift[ed] over the double yellow line." The resolution of the video was not of sufficient quality to portray the initial left of center, however, "the left of center after she began the pursuit was observable."

{¶ 12} The court found that Martorana stopped her vehicle within a reasonable time after Tent activated her siren, but "did not seem to respond to the lights only." Tent observed that Martorana's eyes were red and "she was unable to focus on the task of

5.

finding her registration." Tent administered the HGN and observed four clues, but Martorana was "unwilling" to complete the one-stand test, and stated, "I couldn't even do this sober."

{¶ 13} Before addressing the specifics of Martorana's arguments, we address three of the trial court's factual findings. First, we agree with the trial court that the initial left-of-center is not visible in the recording taken from Tent's dashboard camera; there is significant glare from the headlights of the westbound traffic and the resolution is poor. The finding that Martorana's vehicle veered left of center is based on Tent's hearing testimony. As the trial judge was in the best position to determine the credibility of Tent's testimony, we will not disturb this finding, and we conclude that it is supported by competent, credible evidence.

{¶ 14} Second, we disagree with the trial court's finding that after Tent got behind her, Martorana's vehicle drifted "over *the double yellow line*." (Emphasis added.) We find—and the state concedes—that there was no double yellow line; dotted, broken lines divided the eastbound and westbound lanes. Accordingly, the trial court's finding that the highway was divided by a double yellow line is not supported by competent, credible evidence.

{¶ 15} Third, we disagree with the trial court's finding that once Tent was behind Martorana's vehicle, Martorana "drift[ed] *over*" the line. (Emphasis added.) The video shows that Martorana's vehicle certainly drifted within her lane, but it is impossible to

6.

see whether her vehicle drifted *over* the line. Tent clarified at the hearing that Martorana's vehicle was "bouncing between the lanes," but she testified that she had not stated that Martorana's vehicle had veered over the line at that time ("I did not state that she went left of center here)." Because it is not clear from the video that Martorana's vehicle drifted over the line, and Tent clarified that she "did not state that she went left of center" while Tent was following her, the trial court's finding that Martorana's vehicle drifted "over" the line is not supported by competent, credible evidence.

{¶ 16} All of the trial court's other factual findings are supported by competent, credible evidence, except that it may have been more appropriate to say that Martorana was "unable"—rather than "unwilling"—to perform the one-stand test.

{¶ 17} Having reviewed the trial court's factual findings, we address Martorana's specific arguments.

## A. The Initial Stop

{¶ 18} Martorana first challenges Tent's initial stop of her vehicle. She argues that Tent lacked "probable cause or reasonable suspicion" of a traffic violation to initiate the stop. Martorana claims that (1) Tent's contention that she crossed into the eastbound lane of traffic is not supported by the dash cam video; (2) "bouncing between"—but not over—the lanes, did not provide a basis for initiating a traffic stop; (3) although Tent testified that a vehicle should maintain a distance of one car length for every ten miles per hour, the statute does not say this, Tent did not testify how fast Martorana was driving,

7.

Tent was too far away to estimate the distance between Martorana's vehicle and the truck, and the video does not show that she was following too closely; and (4) the area in question was a marked passing zone, so if she did, in fact, drive left of center, it could have been a lawful attempt to pass the vehicle ahead of her.

{¶ 19} The state responds that (1) Tent was provided with presumptively reliable information from a citizen eyewitness who said that the vehicle was unable to maintain its lane; (2) Tent personally observed Martorana cross the center line into the eastbound lane even though it was not visible on the recording; (3) the information provided by the caller suggested that Martorana did not cross the center line in an attempt to pass a vehicle; (4) Tent's observation of Martorana's vehicle crossing left of center provided reasonable suspicion for the initial stop; and (5) Tent did not initiate the stop based on Martorana's vehicle bouncing between lanes or following too closely, but when combined with the tip and the trooper's observations, these factors added to the totality of the circumstances supporting reasonable suspicion. As noted above, the state concedes that the dividing line was a broken yellow line and not a double yellow line, but it emphasizes that the recording also showed Martorana's vehicle bouncing between lanes and following the truck too closely.

{¶ 20} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d

8.

1204, ¶ 7, citing *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014). This type of seizure is justified if an officer has a "reasonable suspicion"—i.e., "a particularized and objective basis" to suspect—that the person stopped has broken the law. *Id.* at 60. In other words, a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed a traffic violation. *Mays* at ¶ 7-8.

{¶ 21} Martorana repeatedly states that Tent lacked "probable cause or reasonable suspicion" to initiate an investigatory stop. As the authority cited above demonstrates, only reasonable suspicion was required. *See Heien* at 60, quoting *Prado Navarette v. California,* 572 U.S. 393, 396 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014) (clarifying that "only 'reasonable suspicion'—that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law"—is required to justify a traffic stop).

{¶ 22} Under R.C. 4511.25(A), "[u]pon all roadways of sufficient width, a vehicle * * * shall be driven upon the right half of the roadway * * *." This court has recognized that "[w]hen an officer observes a vehicle travel left of the centerline, the officer has a reasonable and articulable suspicion that the driver has violated R.C. 4511.25." *State v. Pelham,* 6th Dist. Wood No. WD-13-020, 2013-Ohio-4524, ¶ 9. Accordingly, Tent's observation of Martorana veering left of center provided her with reasonable suspicion

9.

that Martorana violated R.C. 4511.25(A) and provided a sufficient basis to initiate a traffic stop.

{¶ 23} Martorana points out that under R.C. 4511.25(A)(1), "a driver may enter the opposite lane of travel in order to overtake and pass another vehicle proceeding in the same direction." This is true, and it could provide a legal defense to a charged violation of R.C. 4511.25(A). *Pelham* at ¶ 9. But the Ohio Supreme Court held in *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 17, that "[a]n officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Applying this principle to the same statute at issue here, this court has held that a driver's possible defense to driving left of center under R.C. 4511.25(A)(1)-(5) does not render a stop of the vehicle illegal. *Pelham* at ¶ 9, citing *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 13. *See also State v. Rubsam,* 9th Dist. Medina No. 18CA0089-M, 2019-Ohio-2153, ¶ 10.

{¶ 24} Accordingly, we conclude that Tent had reasonable suspicion of a violation of R.C. 4511.25(A) when she saw Martorana's vehicle veer left of center. The initial stop of Martorana's vehicle was legally justified.

### B. The Field Sobriety Tests

{¶ 25} Martorana argues that Tent lacked reasonable suspicion of impairment to justify further detaining her to administer field sobriety tests. She emphasizes that (1) she did not admit to consuming drugs or alcohol and the trooper saw none; (2) red eyes are

10.

consistent with fatigue; (3) the video does not support Tent's claim that Martorana was driving erratically; (4) the tipster did not correctly describe Martorana's vehicle and stated only that Martorana was not maintaining her lane of travel, without providing any more specific information; (5) she didn't fumble or drop documents; (6) she wasn't uncooperative or belligerent; (7) while she provided a copy of her insurance instead of her registration, Tent had asked her for proof of insurance at the beginning of the stop.

{¶ 26} The state responds that several factors weigh in favor of Tent's reasonable suspicion to conduct field sobriety tests, including (1) the time of night (10:00 p.m.); (2) the call from a concerned motorist who reported that Martorana's vehicle was unable to maintain its lane; (3) Tent's observation of Martorana's vehicle veering into the eastbound lane, bouncing between lanes, and following too closely; (4) the fact that Martorana did not stop until both lights *and* sirens were activated; (5) Martorana reaching around, having trouble focusing on one task at a time, and showing her insurance card instead of her registration; (6) Martorana telling Tent that she "did not blame her" for pulling her over; (7) Martorana's red, bloodshot, glassy eyes; and (8) the fact that Martorana "did not remember" almost hitting her and apologized for it.

{¶ 27} Ohio courts recognize that the administration of field sobriety tests invade one's liberty interests, therefore, "'they must be separately justifiable by specific, articulable facts which show a reasonable basis for the request.'" *State v. Wright*, 2015-Ohio-2600, 38 N.E.3d 485, ¶ 52 (11th Dist.), quoting *State v. Evans,* 127 Ohio App.3d

11.

56, 62, 711 N.E.2d 761 (11th Dist.1998). Courts consider many factors—taken "together with the officer's previous experience in dealing with drunken drivers"—in determining whether an officer had reasonable suspicion to justify the administration of roadside field sobriety testing, including:

(1) the time and day of the stop (Friday or Saturday night as opposed to, *e.g.,* Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given.

*Evans* at f.n.2

{¶ 28} In *State v. Colby*, 2021-Ohio-4405, 181 N.E.3d 610, ¶ 19-20 (6th Dist.), the trial court determined that the trooper had the reasonable suspicion necessary to conduct field sobriety tests during a 2:54 a.m. traffic stop where he observed appellant drive over the fog line three times, appellant had bloodshot and glassy eyes, and appellant fumbled with personal items and dropped his wallet when he was requested to produce his license and evidence of insurance. We reversed the trial court judgment. We noted that the trooper smelled no odor of alcohol or marijuana, there was no admission of drinking, no allegation of slurred or rambling speech, no observation of drugs or alcohol in the vehicle, no allegation that appellant was uncooperative or belligerent, and no report from 911 dispatch or another driver alleging impaired driving. Under such facts, we concluded that the trooper lacked articulable facts that would give rise to a reasonable suspicion justifying the administration of field sobriety tests.

{¶ 29} In *State v. Clinger*, 6th Dist. Erie No. E-21-028, 2022-Ohio-723, ¶ 19, the trial court granted the appellee's motion to suppress and the state appealed. There, appellee called the police after his vehicle was hit by a driver who fled. While investigating the incident, the officer believed that appellee exhibited signs that he was operating his vehicle under the influence of a narcotic. He testified that appellee appeared drowsy and sluggish, his eyelids were droopy, his speech was slow and slurred, and his eyes appeared glassy or bloodshot. The officer also smelled the odor of raw

13.

marijuana. The trial court, after listening to a recording of the encounter, found that appellee's speech was not slurred, leaving only the following factors to be considered: appellee's glassy eyes and tired appearance, and the odor of raw marijuana. We concluded that the trial court did not err in finding that the officer lacked reasonable suspicion to perform field sobriety tests based only on these factors.

{¶ 30} And in *State v. Daniels*, 5th Dist. Fairfield No. 17-CA-50, 2018-Ohio-3113, ¶ 24, the Fifth District reversed a trial court decision denying a motion to suppress evidence obtained during a 2:28 a.m. traffic stop. The appellate court concluded that the officer lacked reasonable suspicion to administer field sobriety tests where the only "erratic" driving he observed was an improper right-hand turn, appellant's eyes appeared red and bloodshot, and appellant was on the phone calling someone to pick up his vehicle. The court noted that the officer did not detect an odor of alcohol, appellant did not admit to consuming any alcohol that night, appellant did not slur his speech in any way, and appellant offered an explanation for why he disagreed that he had made an improper turn.

{¶ 31} But the Fifth District reached a contrary conclusion in *State v. Marcum*, 5th Dist. Delaware No. 18-CAC- 11 0083, 2019-Ohio-2293. There, the trooper initiated a stop at 9:03 p.m. after witnessing the appellant's truck travel over the lane markings on the highway several times. The truck took longer than usual to come to a complete stop, and upon approaching appellant, the trooper noticed that his eyes were glassy and

14.

bloodshot, his speech was slow, he could not easily locate his vehicle information, he fumbled with the paperwork on the passenger seat, and the trooper had to instruct him several times to keep his hands on the steering wheel. The trooper did not observe any odor of drugs or alcohol. The appellate court affirmed the trial court's decision denying appellant's motion to suppress, and concluded that based on the totality of the circumstances, the trooper had reasonable suspicion to detain him to perform field sobriety tests.

{¶ 32} Here, Martorana was pulled over on a Tuesday night at 10:00 p.m. This does not strike us as a day and time that should be afforded any special weight. Nor do we believe that Martorana reaching for her driver's license or showing her insurance card instead of her registration weighs in favor of reasonable suspicion. Tent asked for Martorana's driver's license, then as soon as she started reaching around in her car trying to find it, she became apprehensive and told her to stop reaching. As far as the insurance card, Tent testified that she asked for both registration and proof of insurance (Q: "You asked also for her registration, insurance?" A: "Right."), and that's a piece of information that any driver who has ever been stopped for a traffic violation knows will be requested. Martorana quickly produced the image of her proof of insurance from her cell phone. Instead of giving her the opportunity to also produce her registration, Tent regarded this as a potential sign of impairment and commanded her out of the vehicle.

15.

**{¶ 33}** On the other hand, Tent saw Martorana cross the divider line into the eastbound lane, weave back-and-forth within her lane, touching the lines but not crossing them, and follow behind a truck too closely. This occurred right after another motorist—who provided his name and phone number and remained behind Martorana's vehicle until Tent pulled behind her—called to report that the vehicle could not maintain its lane. Tent observed that Martorana's eyes were red, bloodshot, and glassy. And one of the first things Martorana said to Tent upon being pulled over is "I don't blame you"—not a typical response from a motorist upon being subjected to a traffic stop. These are all factors that weigh in favor of reasonable suspicion.

**{¶ 34}** It is often a close issue whether the specific facts of a case provide an officer with reasonable suspicion for conducting field sobriety tests. *State v. Beeley*, 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, 2006 WL 2640228, ¶ 16. Such decisions are "very fact-intensive." *State v. Burkhart*, 2016-Ohio-7534, 64 N.E.3d 1004, ¶ 15 (4th Dist.). Ohio courts often reach differing conclusions when faced with seemingly similar circumstances. Numerous factors may be considered, and small differences between officers' descriptions of an encounter can form the basis for opposite outcomes. *State v. Watkins*, 2021-Ohio-1443, 170 N.E.3d 549, ¶ 26 (6th Dist.).

**{¶ 35}** Here, having considered the totality of the circumstances, we conclude that Tent had reasonable suspicion to justify detaining Martorana for the purpose of administering field-sobriety tests.

16.

**{¶ 36}** We find Martorana's assignment of error not well-taken.

### III.    Conclusion

**{¶ 37}** The trial court properly denied Martorana's motion to suppress evidence. Trooper Tent had reasonable suspicion to initiate a traffic stop when she saw Martorana veer left of center while driving westbound on U.S. Route 6.  She had reasonable suspicion of impairment to justify further detaining Martorana to administer field sobriety tests based on the information obtained from the motorist who observed that Martorana's vehicle was unable to maintain its lane, the left-of-center violation Tent witnessed, Martorana bouncing within her lane and following too closely, Martorana's red, bloodshot, and glassy eyes, and Martorana's comment that she did not blame Tent for pulling her over.

**{¶ 38}** We find Martorana's assignment of error not well-taken and affirm the May 13, 2022 judgment of the Sandusky County Court, #1.  Martorana is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                           _____
                                                           JUDGE

Christine E. Mayle, J.


Myron C. Duhart, P.J.                        _____
CONCUR.                                                      JUDGE


                                                   _____
                                                           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.