[Cite as *State v. Merillat*, 2025-Ohio-1100.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

State of Ohio/City of Bryan                     Court of Appeals No.    WM-23-005
                                                                        WM-24-008
     Appellee
                                                Trial Court No.  TRC2203084
                                                                 22CR000203
v.

Daniel G. Merillat

     Appellant

**<u>DECISION AND JUDGMENT</u>**

Decided:  March 28, 2025

* * * * *

Emil Graville, III, Assistant Williams County Prosecuting Attorney,
for appellee.

Anthony J. Richardson, II, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is a consolidated appeal encompassing four decisions, all arising from

an October 13, 2022 traffic stop; a June 14, 2023 judgment of the Williams County Court

of Common Pleas, denying appellant's motion to suppress, an August 18, 2023 judgment

of the Williams County Court of Common Pleas, denying appellant's motion to sever

OVI and drug possession cases for trial purposes, a January 23, 2024 judgment of the Williams County Court of Common Pleas, imposing financial sanctions at sentencing on the OVI and drug possession convictions, and a November 3, 2022 judgment of the Bryan Municipal Court, convicting appellant on a minor misdemeanor rear plate illumination traffic offense, respectively. For the reasons set forth more fully below, this court affirms the judgments of the trial court.

{¶ 2} Appellant, Daniel Merillat, sets forth the following four assignments of error:

FIRST ASSIGNED ERROR: THE TRIAL COURT COMMITTED ERROR BY DENYING APPELLANT'S MOTION TO SUPPRESS.

SECOND ASSIGNED ERROR: THE TRIAL COURT COMMITTED ERROR BY IMPOSING FINANCIAL SANCTIONS WITHOUT MAKING THE NECESSARY FINDINGS.

THIRD ASSIGNED ERROR: THE TRIAL COURT COMMITTED ERROR BY NOT GRANTING APPELLANT'S MOTION TO SEVER.

FOURTH ASSIGNED ERROR: THE TRIAL COURT COMMITTED ERROR BY FAILING TO APPOINT APPELLANT COUNSEL, INQUIRE INTO HIS FINANCES TO HIRE COUNSEL, AND WARN APPELLANT ABOUT PROCEEDING PRO SE, AND THAT HE HAD A RIGHT TO APPEAL [IN THE BRYAN MUNICIPAL COURT MINOR MISDEMEANOR TRAFFIC TRIAL].

2.

{¶ 3} The following undisputed facts are relevant to this appeal. This case arises from events occurring on the night of October 13, 2022, during a traffic stop of appellant that occurred when he was driving his motor vehicle in Montpelier. This traffic stop was the subject of the suppression hearing underpinning this case. In conjunction, the traffic stop was captured on both dashcam and body camera video, the video footage of which was likewise reviewed by this court in the course of making a determination on this appeal.

{¶ 4} On the night of October 13, 2022, Ohio State Highway Patrol trooper Blankemeyer ("Blankemeyer") was on duty patrolling Montpelier. Blankemeyer observed appellant driving around Montpelier at night, without the requisite white taillights to illuminate his rear license plate, as mandated by R.C. 4513.05(A). Accordingly, Blankemeyer initiated a traffic stop of appellant.

{¶ 5} Upon the traffic stop, Blankemeyer approached appellant's vehicle and immediately detected an odor of alcohol emanating from the vehicle, observed appellant's eyes to be bloodshot and glossy, speech to be slow and slurred, and demeanor to be unusually nervous and agitated.

{¶ 6} Blankemeyer then requested appellant's license, registration, and proof of insurance. Following this request, Blankemeyer observed appellant's movements to be shaky and uneven, with appellant then conveying that he could provide the license and registration, but was unable to provide proof of insurance. Blankemeyer next inquired as to appellant's purpose in Montpelier that night. Appellant conveyed that he was heading to Marco's to purchase a pizza. However, Blankemeyer observed that appellant was

3.

traveling in the opposite direction of Marco's at the time of the traffic stop, incongruous with the proffered explanation.

{¶ 7} Upon further questioning, and as plainly evident in the video footage, appellant became highly agitated, uncooperative, and combative, questioning and challenging each request and statement of Blankemeyer. Appellant remained so throughout the encounter, as consistently reflected by Blankemeyer's suppression hearing testimony and the corresponding video footage.

{¶ 8} Given these circumstances and observations, Blankemeyer asked appellant to exit the vehicle, in order to determine whether appellant had been operating his motor vehicle while under the influence of alcohol or drugs. Appellant challenged and resisted exiting the vehicle, and began reaching into his pockets, in contradiction of Blankemeyer's directive not to do so for safety reasons. In the course of these events, appellant pulled a cigarette container out of his pocket and tossed it onto the center console. That container was later found to contain a baggie of methamphetamines, in addition to an open, still cold can of beer recovered from under appellant's seat.

{¶ 9} Blankemeyer first performed the horizontal gaze nystagmus (HGN) test, which did not yield unusual findings. Blankemeyer next performed a lack of convergence test, which detects indicia of drug usage other than alcohol. Appellant displayed a lack of convergence in both eyes, an indicator of drug usage. Blankemeyer next performed a modified Romberg test, in which appellant was instructed to stand with his feet together, close his eyes, and count to 30. During this test, Blankemeyer observed swaying, eyelid tremors, and body tremors. Appellant also announced having counted to

4.

30 at the 23-second mark, the seven-second deviation of which is also an indicator of impairment. Blankemeyer then performed the walk and turn test, during which appellant likewise displayed multiple indicia of impairment. Appellant then refused the urine test.

{¶ 10} On the basis of the foregoing, Blankemeyer advised appellant that he was being placed under arrest for OVI. Appellant was non-compliant, tried to pull away, and had to be forcibly placed into position, with the assistance of a second law enforcement officer who had subsequently arrived on the scene, in order for the arrest to proceed.

{¶ 11} Following appellant's arrest, Blankemeyer searched appellant's vehicle, during which he recovered an open, cold, can of Busch Light beer, that appellant had placed under the driver seat, the cigarette container that appellant had pulled from his pocket and tossed onto the center console prior to exiting the vehicle, which contained a plastic baggie of methamphetamines, as well as additional empty beer cans. In addition, the record shows that although appellant denied using methamphetamines, urine and saliva samples later taken from appellant both tested positive for methamphetamines.

{¶ 12} On October 14, 2022, appellant was indicted in the Bryan Municipal Court on one count of operating a motor vehicle under the influence of alcohol or drugs (OVI), in violation of R.C. 4511.19(A)(1)(a), a felony of the third degree, OVI refusal, in violation of R.C. 4511.19(A)(2), a misdemeanor of the first degree, possession of drugs, in violation of R.C. 2925.11(A), a felony of the fifth degree, and a taillight illumination violation, in violation of R.C. 4513.05, a minor misdemeanor.

{¶ 13} On October 18, 2022, but for the taillight illumination offense, the above charges were dismissed, and appellant was then indicted in the Williams County Court of

5.

Common Pleas on one count of OVI, in violation of R.C. 4511.19(A)(1)(a), as enhanced to a felony of the third degree based upon appellant's five prior OVI convictions, and one count of drug possession, in violation of R.C. 2925.11(A), a felony of the fifth degree.

{¶ 14} On November 3, 2022, appellant proceeded to trial on the minor misdemeanor taillight traffic offense in the Bryan Municipal Court on a pro se basis, and was convicted. On February 13, 2023, appellant filed a motion to suppress in the Williams County Court of Common Pleas regarding the two remaining felony offenses. On May 2, 2023, the trial court conducted the suppression hearing. On June 14, 2023, the motion to suppress was denied. On July 24, 2023, appellant filed a motion to sever the two felony offenses, both of which arose from the October 13, 2022 traffic stop. On August 18, 2023, the motion to sever was denied.

{¶ 15} On January 10, 2024, following the denial of the motions to suppress and to sever, appellant voluntarily pled no contest to the pending offenses. On January 23, 2024, the case proceeded to sentencing. The trial court noted at sentencing that appellant's lengthy criminal history includes multiple drug and alcohol related offenses, including five prior OVI convictions, two leaving the scene of an accident convictions, and four driving under suspension convictions. Appellant was sentenced to a 32-month term of incarceration on the OVI conviction, and an 11-month term of incarceration on the drug possession conviction, ordered to be served concurrently, vehicle forfeiture, $385 in restitution, a $500 fine, and discretionary post-release control. This appeal ensued.

6.

{¶ 16} In the first assignment of error, appellant argues that the trial court erred in denying appellant's motion to suppress. In support, appellant alleges that Blankemeyer lacked reasonable, articulable suspicion to initiate the traffic stop, and, in conjunction, further alleges that Blankemeyer lacked additional reasonable, articulable suspicion to warrant the performance of field sobriety tests. We do not concur.

{¶ 17} As this court held in *State v. Escobedo*, 2023-Ohio-3410, ¶ 34, 42-43 (6th Dist.),

> Our review of [a] trial court's judgment, denying the motion to suppress in each case, presents a mixed question of law and fact. *State v. Davis*, 133 Ohio App.3d 114, 117, 726 N.E.2d 10 92 (6th Dist. 1999), citing *State v. Smith*, 80 Ohio St.3d 89, 105, 684 N.E.2d 668 (1997); *see also State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Because the trial court determines factual questions, and is in the best position to consider credibility of the witnesses, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. (Citations omitted), *Burnside* at ¶ 8. However, we review the trial court's conclusions independently, and without deference to the conclusion of the trial court in deciding whether the facts satisfy the applicable legal standard. *State v. Hair*, 6th Dist. Lucas Nos. L-22-1164 and L-22-1165, 2023-Ohio-2422, 2023 WL 454-2532, ¶ 46, citing *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 40, quoting *Burnside* at ¶ 8 * * * An investigatory stop requires reasonable suspicion that warrants the brief detention. *See Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The reasonable suspicion standard is something less than the probable cause needed for arrest, permitting an immediate response by police when confronted with a suspicious individual. *Bobo* at 180, 524 N.E.2d 489, quoting *Adams v. Williams*, 407 U.S. 143, 145-146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) * * * [C]ourts have concluded that an objective and particularized suspicion that criminal activity was afoot must be based on the entire picture -- a totality of the surrounding circumstances. Id at 417-418, 101 S.Ct. at 694-695; [*Bobo* at the syllabus].

{¶ 18} In conjunction, as pertains to the field sobriety testing portion of this assignment, as this court held in *State v. Rasheed*, 2021-Ohio-4509, ¶ 33-34 (6th Dist.),

7.

Field sobriety testing of a driver constitutes a seizure under the fourth amendment and must be separately justified by specific, articulable facts showing a reasonable basis for the request to conduct such testing. *Bowling Green v. Murray*, 6th Dist. Wood No. WD-18-045, 2019-Ohio-4285, ¶ 19, quoting *State v. Trevarthen*, 11th Dist. Lake No. 2010-L-046, 2011-Ohio-1013, ¶ 15 * * * Ohio courts recognize that a number of factors may supply an officer with reasonable suspicion to conduct field sobriety tests, including, but not limited to (1) the time of day that the stop occurred; (2) the area that the stop occurred; (3) whether there was erratic driving that might that might point to a lack of coordination; (4) the existence of a cognizable report that the driver might be intoxicated; (5) the appearance of the suspect's eyes; (6) impairments related to the individual's speech; (7) an odor of alcohol on the car or on the person; (8) the strength of that odor; (9) lack of coordination after the stop; (10) the suspect's demeanor; and (11) the suspect's admission of alcohol consumption.

**{¶ 19}** In applying the above-detailed, guiding legal principles to this case, the transcripts of the suppression hearing are illustrative. During the suppression hearing, Blankemeyer testified in detail regarding his training and experience as a law enforcement officer, including over 100 OVI cases in the one-year period preceding the suppression hearing in this case. Blankemeyer testified that while on duty, and on patrol, in Montpelier on the night of October 13, 2022, "I was going eastbound on Water Street. I observed a vehicle in front of me that appeared to not have any working [rear] license plate lights. Once I caught up to the vehicle, I believe it was about River Street, the vehicle made a right-hand turn. *At that time, I confirmed that the [rear] plate was completely dark and did not have any white lights illuminating that plate*." (Emphasis added).

**{¶ 20}** Inquiry was then made, "And that is [] a violation of the Ohio Revised Code?" Blankemeyer replied, "Correct. [R.C.] 4513.05." In next describing the traffic

8.

stop, initiated upon his observation of appellant's R.C. 4513.05 violation, Blankemeyer testified,

> Upon initially approaching the defendant, [I] requested his information, while [appellant] was obtaining his information, *I observed his eyes to be bloodshot and glassy. I also observed eyelid tremors that were visible.* During my interactions with him, as he's obtaining his information, *I observed his hand movements to be extremely jittery. I could also detect a moderate odor of an alcohol beverage emanating from the vehicle.* [Appellant] did inform me that he was going to * * * Marco's pizza to get something to eat * * * *[appellant's speech] was slow and slurred * * * he appeared nervous, and he appeared * * * agitated.* (Emphasis added).

{¶ 21} Inquiry was next made as to what Blankemeyer's assessment of the situation was at this time, given these observations of appellant. Blankemeyer replied that he had determined that, "[Appellant] could possibly have been under the influence of either alcohol and/or drugs", and further noted that appellant had conceded at that time that, "There were beer cans [inside appellant's vehicle]."

{¶ 22} In next testifying regarding his determination to instruct appellant to exit his vehicle, in order to ascertain where appellant was driving while impaired, Blankemeyer testified,

> Yes, I did [instruct him to exit his vehicle] due to the eye observations of the glassy bloodshot eyes, the jittery hand movements, his demeanor, and then along with the odor of alcoholic beverage emitting from the vehicle * * * *[Appellant] did not immediately exit the vehicle as requested, instead he began to dig towards his right, his right pants pocket, and at that time I told him to stop digging * * * I again requested him to exit the vehicle, he again did not comply and then * * * he took a cigarette carton out of his sweatshirt pocket and threw it on the center counsel.* (Emphasis added).

{¶ 23} Upon appellant finally complying and exiting the vehicle, Blankemeyer testified, "I spoke to him outside the front of my, at the front of my patrol car. I

9.

continued to observe, bloodshot, glassy eyes.  I began to ask him about conducting field sobriety to make sure he was okay to be driving."

{¶ 24} Blankemeyer next testified that following completion of the HGN, which did not produce unusual results,

> I went onto a lack of convergence test.  A lack of convergence is the
> inability of a person's eyes to converge or cross as a stimulus is moved
> inward to the bridge of their nose * * * that can be present with depressants,
> inhalants, anesthetics, cannabis, [and other drugs] * * * I did observe a lack
> of convergence in his left eye * * * [I could also see] that his right eye did
> move back outward [also indicative of impairment].  The next test I would
> have performed was the walk and turn * * * [D]uring the test, you're
> looking for a total of eight clues     * * * [D]uring the instructions, he
> moves out of the starting position, can't keep balance from the starting
> position, so he breaks that heel to toe, and then, he starts the test without
> being told to do so.  During the walking portion of the test [appellant] takes
> an incorrect amount of steps.  Takes an improper turn. Does not touch heel
> to toe and steps off the line * * * [Based upon] the number of indicators
> that I observed, I believed him to be under the influence at that time and I
> went to place him under arrest for [OVI].

{¶ 25} In testifying regarding conducting a search of appellant's vehicle following the arrest, Blankemeyer testified,

> I located under the driver seat a fresh, Busch Light, I dumped that out on
> the scene.  It still had fluid in it and it was still cold.  Additionally, I located
> the cigarette carton that [appellant] has taken out of his coat, or sweatshirt
> pocket.  Located inside of that was a small baggie of a crystal substance
> [later determined to be methamphetamines] * * * I did offer him a urine test
> * * * he refused to take it.

{¶ 26} In conjunction with the above, gleaned from the transcripts of the suppression hearing, we have also reviewed the dash cam and body camera video footage of these events.  The video footage aligns with Blankemeyer's testimony of the events. The footage clearly evinces that appellant's vehicle has no functioning light to illuminate

10.

the rear plate, it is fully darkened, clearly evinces the multiple indicia of impairment cited by Blankemeyer preceding the performance of field sobriety testing, and clearly collaborates Blankemeyer's testimony pertaining to appellant's nervous, agitated, and argumentative demeanor throughout the traffic encounter.

{¶ 27} Given the forgoing, we find that the record of evidence contains competent, credible evidence of appellant's R.C. 4513.05 violation precipitating the traffic stop, and contains additional competent, credible evidence suggestive of impairment following the stop; namely, appellant's glassy bloodshot eyes, the strong odor of alcohol emanating from appellant's vehicle, the lack of coordination in hand movements, the nervous, agitated, defiant demeanor, and the admission of the presence of alcohol in the vehicle [separate from the methamphetamines concealed in the cigarette container also recovered from appellant's vehicle].

{¶ 28} We find that the record shows reasonable, articulable suspicion in support of the initial traffic stop, and further shows additional, reasonable articulable suspicion of impairment in support of the performance of field sobriety testing. Thus, the record contains competent, credible evidence in support of the trial court's denial of the motion to suppress. We find appellant's first assignment of error not well-taken.

{¶ 29} In appellant's second assignment of error, appellant argues that the trial court erred in imposing financial sanctions at sentencing on his felony convictions. In support, appellant alleges that the record is devoid of indicia of appellant's ability to pay, evidence of which is mandated by R.C. 2929.15(B)(5), in order for financial sanctions to properly be imposed. The record reflects otherwise.

11.

{¶ 30} R.C. 2929.19(B)(5) establishes, in relevant part, "[B]efore imposing a financial sanction * * * the court shall consider the offenders present and future ability to pay the amount of the sanction or fine."

{¶ 31} In conformity with the above, as held by this court in *State v. Saxer*, 2023-Ohio-3548, ¶ 14 (6th Dist.),

> R.C. 2929.19(B)(5) requires that the trial court consider the offender's present and future ability to pay the amount of the sanction or fine. However, [a] hearing on the defendant's ability to pay is not required. Nor is a court required to make findings. All that is required is that the trial court consider the defendant's ability to pay * * * [A] trial court is not required to expressly state that it considered [a defendant's] ability to pay a fine * * * [A] reviewing court may infer that a trial court considered the issue. *State v. Johnson*, 6th Dist. Sandusky No. S-20-037, 2021-Ohio-3380, ¶ 28, quoting *State v. Davenport*, 2017-Ohio-688, 85 N.E.3d 443, ¶ 31 (2d Dist.); *State v. Lieb*, 6th Dist. Erie No. E-22-025, 2023-Ohio-574, ¶ 9-11 * * * An appellate court will look to the totality of the record to determine whether the requirement has been satisfied. *Id*. at ¶ 11.

{¶ 32} Contrary to appellant's premise in support of the second assignment of error, that the record is devoid of evidence manifesting the trial court's consideration of evidence reflecting appellant's ability to pay financial sanctions, the transcript of the change of plea hearing reflects that direct inquiry was made of appellant, "And how old are you?" Appellant replied, "Forty-two years old. Inquiry was next made, "Where do you work?" Appellant replied, "Clark's lawn care [and] snowplow removal." Inquiry was next made, "And did you work back in October, 2022?" Appellant replied, "AGB Farming. I was a welder there." Upon being asked to describe the type of work he performed in his welding position, appellant replied, "We build concrete washout pans and roll off [containers] for concrete companies * * * [W]e build [them] from scratch."

12.

{¶ 33} In conjunction with the above, the transcript of the sentencing hearing reflects that counsel for appellant conveyed to the court, *"[Appellant] is a hard-working, full-time employee, young man from the area and maintains employment and contributes by paying his taxes * * * [B]oth property and income taxes*."  (Emphasis added).

{¶ 34} Based upon the foregoing, we find that the totality of the record contains clear evidence from which to infer that the trial court considered appellant's ability to pay, prior to the imposition of the financial sanctions in this case.  Appellant has not demonstrated that the trial court failed to comply with R.C. 2929.19(B)(5).  We find appellant's second assignment of error not well-taken.

{¶ 35} In appellant's third assignment of error, appellant argues that the trial court erred in not severing the OVI and drug possession offenses, for trial purposes, both of which arose from the October 13, 2022 traffic stop.  We do not concur.

{¶ 36} Crim.R. 8(A) establishes,

> Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

{¶ 37} In conjunction, as held by this court in *State v. Haas*, 2025-Ohio-683,¶ 30 (6th Dist.),

> It is well-settled that [Crim.R. 8(A)] joinder is favored and is to be liberally permitted.  *State v. Scott*, 2003-Ohio-2797,¶ 13 (6th Dist.), quoting *State v. Schaim*, 65 Ohio St.3d 51, 58, (1992).  The law favors joinder for public policy reasons, such as: to conserve judicial economy and prosecutorial time; to conserve public funds by avoiding duplication inherent in multiple

13.

trials; to diminish the inconvenience to public authorities and witnesses; to promptly bring to trial those accused of crimes; and to minimize the possibility of incongruent results that can occur in successive trials before different juries. *Id*., quoting *State v. Dunkins*, 10 Ohio App.3d 72, (9th Dist. 1983), paragraph one of the syllabus.

**{¶ 38}** In applying these governing legal principles to the facts of this case, the record shows that on October 13, 2022, appellant was driving his motor vehicle in Montpelier with no illuminated rear plate, as mandated by R.C. 4513.05, and was stopped by Blankemeyer. In the course of the stop, Blankemeyer observed multiple indicia of impairment, and appellant's sobriety tests likewise reflected multiple indicia of impairment. Accordingly, appellant was placed under arrest for OVI. In the ensuing search of appellant's vehicle, both an open container of alcohol and a plastic baggie of methamphetamines were recovered. Given these facts and circumstances, the record shows that the acts were of a similar character, were part of the same transaction [traffic stop], and were part of a common course of conduct [driving through Montpelier while impaired on October 13, 2022].

**{¶ 39}** Thus, in accord with Crim.R. 8(A) and *Haas*, we find that appellant's motion to sever was properly denied. We find appellant's third assignment of error not well-taken.

**{¶ 40}** In appellant's fourth assignment of error, appellant argues that the trial court erred in the course of appellant's R.C. 4513.05 minor misdemeanor traffic trial, in not appointing trial counsel, in not making financial inquiry in connection to same, and in not advising appellant of the right to appeal.

14.

**{¶ 41}** While appellant appears to premise this argument on the totality of his offenses, which included both felonies and the minor misdemeanor traffic offense, this position fails to acknowledge that on the date underlying appellant's fourth assignment of error, November 3, 2022, the only case proceeding was the Bryan Municipal Court R.C. 4513.05 minor misdemeanor traffic offense, to which none of the protections cited by appellant are applicable.

**{¶ 42}** Crim.R. 44(A) establishes, in relevant part, "Where defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent the defendant.

**{¶ 43}** Similarly, Crim.R. 32(B) establishes, in relevant part, "[A]fter imposing sentence in a serious offense that has gone to trial, the court shall advise the defendant that the defendant has a right to appeal the conviction."

**{¶ 44}** In conjunction with the above, as held in *Twinsburg v. Corporate Sec., Inc.*, 9th Dist. Summit No. 17265, 1996 WL 73370 (Feb. 21, 1996), "Minor misdemeanors have been distinguished from other misdemeanors by the Supreme Court of Ohio * * * Other normally-protected rights have been held not to be protected in the case of minor misdemeanors where no incarceration may be imposed as a penalty."

**{¶ 45}** Similarly, as held in *Mentor v. Meyers*, 2014-Ohio-2011, ¶ 17 (11th Dist.), "It is well settled in Ohio that an individual charged with a minor misdemeanor, who faces no possible jail time as a sentence, is not entitled to appointed counsel. *See Willard v. Wertz*, 6th Dist. Huron No. H-00-001, 2001 WL 376391 (Apr. 13, 2001)."

15.

{¶ 46} Accordingly, the protections cited by appellant in the fourth assignment of error are inapplicable to minor misdemeanors, such as the R.C. 2913.05 minor misdemeanor traffic offense underlying the fourth assignment of error.

{¶ 47} Wherefore, we find appellant's fourth assignment of error not well-taken.

{¶ 48} On consideration whereof, the judgments of the Williams County Court of Common Pleas and the Bryan Municipal Court are hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.        _____
                                                          JUDGE
Gene A. Zmuda, J. _____

_____
Charles E. Sulek, P.J.                                                JUDGE
CONCUR.

_____
                                                      JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.