[Cite as *State v. Adams*, 2025-Ohio-2800.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

Appellee

v.

Anthony Alan Bais Adams

Appellant

Court of Appeals No.  L-24-1234

Trial Court No.  CR0202302262

**DECISION AND JUDGMENT**

Decided:  August 8, 2025

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lorrie J. rendle, Assistant Prosecuting Attorney, for appellee.

Henry Schaefer, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal of an April 12, 2024 judgment of the Lucas County Court of Common Pleas, denying appellant's motion to suppress, filed in the course of the R.C. 2921.331(B) failure to comply with the signal or order of a police officer offense underlying this appeal.

{¶ 2} For clarity, we note that although appellant attaches the September 10, 2024 sentencing judgment to this appeal, and captions it as the, "Judgment Entry Appealed",

the sole assignment of error contests the propriety of the trial court's April 12, 2024 motion to suppress judgment entry, denying the motion to suppress, which became a final and appealable order upon appellant's conviction and sentencing on September 10, 2024. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 3} Appellant, Anthony Bais Adams, sets forth the following sole assignment of error:

"I. The Court erred when it failed to grant [appellant's] Motion to Suppress."

{¶ 4} The following undisputed facts are relevant to this appeal. On October 15, 2022, two Lucas County Sheriff's Department deputies, Deputies Navarre and Danielski ("Navarre" and "Danielski"), were separately patrolling a portion of Springfield Township, with both deputies on patrol in the vicinity of the Hill Ave. and McCord Rd. intersection.

{¶ 5} While on patrol, both deputies placed focus upon surveillance of a particular Hill Ave. residence, due to its known, ongoing history of unlawful drug activity; including trafficking, consumption, and overdose incidents.

{¶ 6} Navarre first observed appellant's vehicle pull into the driveway of the subject Hill Ave. residence. Navarre then notified Danielski that a vehicle with Michigan plates and darkly tinted windows had just arrived at the known drug house and to keep it under surveillance, as Danielski's current position was better situated than Navarre's for continued surveillance of appellant's vehicle. Danielski observed a passenger in the

2.

vehicle go into the residence, stay inside for approximately two minutes, and then return to appellant's vehicle.

{¶ 7} Upon appellant's vehicle leaving the residence, Danielski followed it, activated his overhead emergency lights, and attempted to conduct a traffic stop of appellant. Navarre's vehicle was following Danielski's vehicle, as they attempted to initiate a traffic stop of appellant.

{¶ 8} Although appellant initially pulled into the parking lot of a commercial business at Hill Ave. and McCord Rd., and slowed down, appellant did so just long enough for the passenger to jump out of the vehicle. Appellant then sped away, fleeing the scene at a high rate of speed. No traffic stop was effectuated.

{¶ 9} Danielski remained at the location where the passenger had fled on foot, while Navarre drove off in pursuit of appellant. Appellant led Navarre on a high-speed chase, during which appellant ignored traffic devices, drove off of the roadway, through front yards, onto sidewalks, and ultimately abandoned his vehicle at a commercial business on Airport Hwy., whereupon appellant fled on foot into the woods behind the business.

{¶ 10} Following appellant's abandonment of his vehicle and escape into the woods, responding law enforcement officers recovered appellant's wallet, cell phone, and State of Michigan identification card from the abandoned vehicle. Officers subsequently confirmed that the abandoned vehicle was registered to appellant.

3.

{¶ 11} The record shows that all items recovered from appellant's vehicle were obtained following appellant's flight from the deputies, abandonment of his vehicle, and escape into the nearby woods.  In conjunction, the record shows that in the course of the disposition this case, appellant acknowledged his flight from the deputies and conceded that he did so due to being on active post-release control for a separate aggravated burglary conviction at the time of the attempted traffic stop.

{¶ 12} On August 16, 2023, appellant was indicted on one count of failure to comply with the signal or order of a police officer, in violation of R.C. 2921.331(B), a felony of the third degree.  On March 8, 2024, appellant filed a motion to suppress, arguing that the deputies concerns regarding observing appellant's darkly tinted windows prior to attempting to make a traffic stop was pretextual, as Ohio's window tint regulations are inapplicable to appellant's Michigan vehicle, thereby arguably undercutting claims of possessing the requisite reasonable articulable suspicion to make a traffic stop.

{¶ 13} On March 26, 2024, the suppression hearing was conducted.  Appellee offered the testimony of Navarre and Danielski.  Appellant presented no witnesses.

{¶ 14} Navarre testified that while the issue of window tinting arose during the traffic encounter with appellant, the way that the events ultimately unfolded, no traffic stop was effectuated, as appellant fled prior to completion of a traffic stop.  Inquiry was made of Navarre, "And just to be clear was the – were any traffic citations issued for this

4.

vehicle?" Navarre replied, "No." In conjunction, inquiry was next made of Navarre, "And, in fact, was the [traffic] stop able to be completed?" Navarre replied, "No."

{¶ 15} Consistently, inquiry was made of Danielski, "And did you attempt to stop the vehicle that you saw with the dark windows?" Danielski replied, "Yes * * * The vehicle pulled into a parking lot, a little plaza parking lot with different businesses * * * [T]he passenger exited, and [appellant then] led my partner onto a pursuit." Follow-up inquiry was made of Danielski, "So is it fair to say, then, that you weren't able to actually conduct a traffic stop?" Danielski replied, "Right."

{¶ 16} In accord with the testimony of Navarre and Danielski, the record shows that when appellant's vehicle briefly pulled into the commercial parking lot, no traffic stop was made, no traffic citations were issued, and no items were recovered from appellant's person or appellant's vehicle. Appellant's flight from the parking lot, admittedly to avoid potential post-release control violation consequences, prompted the subsequent, high-speed pursuit which underlies this appeal.

{¶ 17} On April 12, 2024, the trial court denied appellant's motion to suppress. On July 17, 2024, appellant pled no contest to the sole count of failure to comply with the signal or order of a police officer, in violation of R.C. 2921.331(B), a felony of the third degree. A presentence investigation was ordered.

{¶ 18} On September 4, 2024, the sentencing hearing was conducted. Appellant conveyed to the court at sentencing, "I have no excuse for what I did. I know I have to take responsibility for my actions. I have no idea what I was thinking. * * * I made a

5.

really bad choice * * * I realize [that] I put the public at a lot of risk * * * I know I have to face the music with it."  Appellant was sentenced to a two-year term of incarceration. This appeal ensued.

{¶ 19} In the sole assignment of error, appellant argues that the trial court erred in denying appellant's motion to suppress.  In principle support, appellant argues, "The pretextual stop is not supported by reasonable, articulable suspicion."

{¶ 20} As this court held in *State v. Merillat*, 2025-Ohio-1100, ¶ 17 (6th Dist.),

> Our review of [a] trial court's judgment, denying the motion to suppress in each case, presents a mixed question of law and fact.  *State v. Davis*, 133 Ohio App.3d 114, 117, 726 N.E.2d 1092 (6th Dist. 1999), citing *State v. Smith*, 80 Ohio St.3d 89, 105, 684 N.E.2d 668 (1997); *see also State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  Because the trial court determines factual questions, and is in the best position to consider credibility of the witnesses, we must accept the trial court's findings of fact if they are supported by competent, credible evidence.  (Citations omitted), *Burnside* at ¶ 8.  However, we review the trial court's conclusions independently, and without deference to the conclusion of the trial court in deciding whether the facts satisfy the applicable legal standard.  *State v. Hair*, 6th Dist. Lucas Nos. L-22-1164 and L-22-1165, 2023 WL 4542532, ¶ 46, citing *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 40, quoting *Burnside* at ¶ 8 * * * The reasonable suspicion standard is something less than the probable cause needed for arrest, permitting an immediate response by police when confronted with a suspicious individual.  *Bobo* at 180, 524 N.E.2d 489, quoting *Adams v. Williams*, 407 U.S. 143, 145-146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

{¶ 21} In conjunction with the above, given that appellant fled the attempted traffic stop, later abandoned his vehicle, and then escaped into nearby woods on foot, as pertains to appellant's wallet, cell phone, and Michigan identification card thereafter recovered from appellant's vehicle, as held in *State v. Camper*, 2023-Ohio-4673, ¶ 25 (10th Dist.), appellant lacked standing to challenge the search and seizure of his abandoned property:

> A defendant does not have standing under the Fourth Amendment to object to a search and seizure of property the defendant has voluntarily abandoned. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph two of the syllabus. Defendant lacks standing to challenge a search of abandoned property because society does not recognize an expectation of privacy in abandoned property as being objectively reasonable. *Gould* at ¶ 20. *Accord United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983) (stating that '[w]hen individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had).'

{¶ 22} In applying these governing legal principles to this case, we note that the record shows, through the unrefuted suppression hearing testimony of both Navarre and Danielski, that no traffic stop of appellant was effectuated on October 15, 2022. Rather, a traffic stop was attempted, but was thwarted prior to completion when appellant fled the scene of the attempted stop, necessitating the subsequent high-speed chase.

{¶ 23} The record further shows that only upon appellant's abandonment of his vehicle after fleeing from the deputies, was appellant's wallet, cell phone, and Michigan identification, recovered from appellant's vehicle, ultimately culminating in appellant's sole indictment on one count of failure to comply with the signal or order of a police officer, in violation of R.C. 2921.331(B), the offense from which this appeal arises.

7.

{¶ 24} Based upon the foregoing, in accord with *Merillat* and *Camper*, we independently find that appellant abandoned the above-described items of property left behind in his vehicle when fleeing into the woods on foot. As such, appellant lacked any objectively reasonable privacy interest in the items seized. Based upon the forgoing, the trial court's denial of appellant's motion to suppress was supported by competent, credible evidence. Therefore, we find appellant's assignment of error not well-taken.

{¶ 25} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                         _____

                                               JUDGE

Christine E. Mayle, J.                      

Myron C. Duhart, J.                     _____
CONCUR.                                                 JUDGE

                                               _____
                                                  JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.